## S91A0204. LATTARULO v. THE STATE.
### (401 SE2d 516)

CLARKE, Chief Justice.

This is an appeal from a conviction for driving under the influence of alcohol. Appellant raises several constitutional issues and other alleged errors in the trial of her case. We find no error and affirm the conviction.

Carrie Angela Lattarulo was stopped for speeding. When she emerged from her car, the arresting officer noticed that she was unsteady on her feet, that her speech was slurred, her breath smelled of alcohol, her clothing was disarranged, and her face was flushed. The officer also observed four or five empty beer bottles on the front floorboard of the car. A breathalyzer test given about an hour after she was stopped yielded a .19 blood/alcohol concentration result. Lattarulo was arrested and convicted of speeding and driving under the influence.

1. Lattarulo first contends that OCGA § 40-6-392 (b) (3) creates an unconstitutional, burden-shifting presumption that a person with 0.10 grams of alcohol per liter of blood is "under the influence" of alcohol.

In *Lester v. State,* 253 Ga. 235 (320 SE2d 142) (1984), we upheld the constitutionality of OCGA § 40-6-391 (a) (4) which criminalizes the act of "driving while having a blood-alcohol count of at least .12%." Id. at 237. We explained that by so defining the criminal act, the legislature had made irrelevant the driving ability of any individual with that blood-alcohol ratio. We said, "[t]he statute represents the judgment that the public interest will be best served if no one with such a high blood-alcohol count drives." Id. at n. 5. We held that

the statute did not create an unconstitutional presumption of guilt because (1) the state is still required to prove beyond a reasonable doubt that the defendant committed the act of driving while having a blood-alcohol level of .12 or higher; and, (2) any defendant may challenge either the evidence that he had that blood-alcohol level or that he was driving. Id.

We now hold that the provision challenged here, although it is worded in terms of a presumption, actually has the effect of defining the level of blood-alcohol that is sufficient to permit an inference that the driver is "under the influence." It does not create a burden-shifting presumption of guilt. OCGA § 40-6-392 (b) (3) must be read in conjunction with OCGA § 40-6-391 (a) (1)-(3) which makes it a crime to drive while "under the influence" of alcohol, a drug or a combination of alcohol and a drug "to the extent that it is less safe for the person to drive." OCGA § 40-6-392 (b) (1)-(3) then defines at what level of blood-alcohol a person is "under the influence" within the meaning of OCGA § 40-6-391 (a) (1)-(3). OCGA § 40-6-392 (b) (1)-(3) represents the legislative determination that the public interest is best served if people with a blood-alcohol level of less than .05 grams or less are permitted to drive; while people with a blood-alcohol concentration between .05 and .099 may drive only if they can do so safely; and people with a blood-alcohol concentration above .10 grams per liter should not drive at all. This determination is within the legislature's authority under the Twenty-First Amendment and the police power and is the type of determination that is particularly well-suited to the legislative process.

The challenged provisions do not relieve the state of its burden of proving that the accused was "under the influence" and was driving. They do not prevent the accused from introducing any evidence to demonstrate that the blood-alcohol test was inaccurate or that he did not commit the offense. Further, precedents of the Court of Appeals have established that the statute may not be charged to the jury using the word "presumption." *Simon v. State*, 182 Ga. App. 210 (355 SE2d 120) (1987); *Peters v. State*, 175 Ga. App. 463 (333 SE2d 436) (1985). Under these precedents, the jury may not be instructed that the blood-alcohol level creates a presumption of guilt. Id. Therefore, we conclude that the challenged provisions do not create an unconstitutional presumption.

2. Lattarulo next argues that the statutory scheme is unconstitutional because it does not apprise her of the "nature and cause of the accusation against her" in violation of the due process and equal protection clauses of the U. S. Constitution. We find no merit in these arguments. The statute as recently amended is no more vague or indefinite than it was when we held that it passed constitutional muster in *Cook v. State*, 220 Ga. 463 (139 SE2d 383) (1964) and in *Cargile v.*

*State*, 244 Ga. 871 (262 SE2d 87) (1979). Indeed, the present statute is even more definite than its predecessors. We find no constitutional infirmity.

3. Lattarulo next asserts that the results of a breathalyzer test carried out on an Intoximeter 3000 machine should be excluded from evidence because they have not been shown to be scientifically reliable.

· In *Harper v. State*, 249 Ga. 519, 525 (292 SE2d 389) (1982), we held that the test for admissibility of novel scientific evidence is whether the procedure or technique "has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure 'rests on the laws of nature.' " We went on to say that "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." Id. at 526. Further, in *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990), we made clear that the trial court need not exclude scientific evidence simply because it bears some possibility of error. "No procedures are infallible." Id. at 287.

Under the standards enunciated in these cases, the results of breathalyzer tests are clearly admissible. The breathalyzer is hardly "novel" scientific evidence. Its acceptance is almost as widespread as radar or fingerprints. See, e.g., *State v. Hartwig*, 732 P2d 339 (Idaho App. 1987); *State v. Miles*, 349 NW2d 739 (Wis. App. 1984); *Hamann v. State*, 565 A2d 924 (Del. 1989); *State v. Jordan*, 575 A2d 309 (Me. 1990); *Layton City v. Watson*, 733 P2d 499 (Utah 1987). (There is universal acceptance of the reliability of breathalyzer evidence.) The Intoximeter 3000, the type of breathalyzer machine used in this case, is used, at a minimum, in Alaska, Florida, Georgia, Idaho, New Hampshire, New York, Tennessee, Wisconsin, Wyoming, and country-wide in England. Its characteristics, theory, operation, and scientific acceptability have been discussed in numerous judicial opinions. See particularly *People v. Jones*, 118 Misc2d 687, 461 NYS2d 962 (1983).

Further, the expert testimony introduced by Lattarulo does not indicate that the Intoximeter 3000 test is not based on sound scientific theory, rather it indicates only that the test has some margin for error or may give an erroneous result under certain circumstances. As we noted above, no procedure is infallible. An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction. Such evidence would relate to the weight rather than the admissibility of breathalyzer results. Moreover, the legislature has by statute created procedural safeguards to minimize the possibility of erroneous test results. Under

OCGA § 40-6-392 (a) (1), breathalyzer tests may only be administered according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by a person who has a valid permit to administer the test. The arresting officer is also required by statute to inform the accused of his/her right to have a blood test administered by a qualified person of his/her own choice. OCGA § 40-6-392 (a) (3) (4).

In sum, we hold that trial courts may take judicial notice that the Intoximeter 3000 machine test results are based on accepted scientific theory or "rest upon the laws of nature"; and, when the statutory requirements for admissibility are met, the results may be admitted into evidence without expert testimony regarding the scientific theory behind the operation of the test.

4. Appellant next argues that the results of the breath test should have been excluded because it was not conducted in accordance with methods properly approved by the Division of Forensic Sciences. Appellant argues that the Intoximeter 3000 has not been properly approved because the Division of Forensic Sciences did not comply with the Administrative Procedure Act in approving the currently used version of the Intoximeter 3000 as modified by the disengagement of the "Taguchi cell," a device that measures acetone and other substances that might interfere with the test result. This argument is without merit.

The record demonstrates that in 1984 it was determined within the Department of Forensic Sciences that the Taguchi cell affected only aberrant cases and was not worth the time and effort necessary to calibrate it. The machines currently used are not modified "by the trooper in the field," as appellant charges. Since 1984, the Intoximeter 3000 machines have been ordered and shipped from the factory with the Taguchi cell device turned off. The machines are received, approved, set up, and delivered to the local police departments by the Department of Forensic Sciences. They are maintained and calibrated by the Department of Forensic Sciences. Finally, the use of the Intoximeter 3000 was approved in accordance with the Administrative Procedures Act in 1986. At that time, the Division of Forensic Sciences had not used a Taguchi cell for two years. We therefore conclude that the Intoximeter 3000 was approved in accordance with the statutory requirements.

5. Lattarulo next argues that the trial court erred in failing to quash the speeding citation and the driving under the influence accusation. We have reviewed the record and conclude that the forms used were in substantial compliance with the rules of the Department of Public Safety and state statutes. Any deficiency in the accusation or citation was purely technical and did not work to deprive the appellant of any significant right. We find no error in the trial court's

denial of the motions to quash.

6. We have reviewed Lattarulo's claim that the trial court erred in charging the jury with the language of OCGA § 40-1-1 (1) regarding "alcohol concentration" and find it to be without merit.

7. Finally, Lattarulo contends that the court should have granted a directed verdict in her favor. We disagree. The evidence adduced at trial was certainly sufficient to support a verdict of guilty beyond a reasonable doubt on each offense charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Virgil L. Brown & Associates, Virgil L. Brown, Bentley C. Adams III, Eric D. Hearn,* for appellant.

*Carl A. Veline, Jr., Solicitor, Cynthia Trimboli Adams, Assistant Solicitor,* for appellee.