## A00A1117. DIAZ v. THE STATE.
(537 SE2d 784)

Smith, Presiding Judge.

Kerwin Diaz was found guilty in a bench trial of driving under the influence of alcohol to the extent that he was a less safe driver, failing to maintain lane, and driving without a license. He appeals his conviction and sentence, contending that the evidence was insufficient to find him guilty of DUI and that the trial court erred in admitting certain evidence, in sentencing him, and in finding him guilty of violating OCGA § 40-5-20. We find no merit in these contentions, and we affirm the judgment.

The record shows that Gwinnett County Police Officer Gale Higginbotham Murray was on duty when she observed Diaz's vehicle make a turn into the center lane of a three-lane highway without using a turn signal, then twice cross partially into the left lane and reenter the center lane. Murray initiated a traffic stop, and when she approached the open driver's side window, she noticed a strong odor of alcohol. When requested to show a driver's license and proof of insurance, Diaz produced a Tennessee driver's license and insurance card. He told Murray that he had not had anything to drink and that he had lived in Georgia about a month and a half.

Murray checked Diaz's license and found it valid. She then requested that Diaz step out and perform various field sobriety tests, which he did. When Diaz left the car, Murray still smelled a moderate odor of alcohol about him. She again questioned him about his drinking, and he again told her he had "nothing" to drink.

Diaz exhibited all six clues on the horizontal gaze nystagmus test, had difficulty maintaining his balance on the nine-step walk and turn test, and swayed back and forth twice on the one-leg stand. The alco-sensor test was positive for the presence of alcohol. Based on these field tests and Murray's experience, training, and observations, she formed the opinion that Diaz was under the influence of alcohol to the extent that he was a less safe driver. Diaz was arrested and read his implied consent rights. Diaz agreed to submit to a state-administered breath test, and he was transported to the Gwinnett County Jail, where two tests were administered. Diaz's blood alcohol level was 0.090 on the first test and 0.089 on the second test.

Diaz testified in his own defense. He admitted having three or four 12-ounce beers at a nightclub. He also admitted he had been living in Georgia for five years without obtaining a Georgia driver's license.

1. Diaz contends the evidence was insufficient to support his conviction for DUI to the extent he was a less safe driver. On the contrary, Diaz's conviction on this count was more than amply supported.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and footnote omitted.) *Byrd v. State*, 240 Ga. App. 354 (523 SE2d 578) (1999). If a driver's blood alcohol level is 0.08 grams or more, the trier of fact may infer that the driver is under the influence of alcohol. *Stepic v. State*, 226 Ga. App. 734, 735-736 (1) (487 SE2d 643) (1997). Here, in addition, when viewed in the light most favorable to the verdict, the evidence presented at trial showed that Officer Murray was trained and experienced in DUI detection. She observed Diaz driving erratically, and she detected the odor of alcohol on him. Diaz lied to the officer about his drinking and about how long he had lived in Georgia. Diaz's eyes were red and glazed, he performed poorly on several field sobriety tests, and the alco-sensor test indicated the presence of alcohol. He admitted consuming three or four 12-ounce beers before driving, and his blood alcohol level was between 0.089 and 0.090.

This court has held that the smell of alcohol, intoxicated appearance, furtive conduct, and a positive alco-sensor test are sufficient to support a conviction for DUI to the extent of being a less safe driver. *Byrd*, supra. The evidence presented here was more than sufficient to support Diaz's conviction on that charge.

2. Diaz maintains the trial court exceeded its authority in sentencing him to 48 hours confinement without credit for time served. He argues that OCGA § 17-10-11 provides expressly that a defendant is entitled to credit for time served. Diaz is correct that "each person convicted of a crime in this state shall be given full credit for each day spent in confinement awaiting trial and the credit or credits shall be applied toward the convicted person's sentence." (Citations and punctuation omitted.) *Addo v. State*, 212 Ga. App. 163 (1) (441 SE2d 486) (1994) (physical precedent only). But the amount of credit given for time served is computed by the pre-sentence custodian, and it is awarded by the post-sentence custodian. Id. The trial court is therefore not involved in this matter. And here, although the trial court did comment that she would not give Diaz credit for time served, that is not reflected on the conviction and sentence entered. Even if *Addo* had precedential value, this situation is unlike *Addo*; no conflict exists for Diaz's post-trial custodian between enforcing Diaz's sentence and complying with OCGA § 17-10-11 (a).

3. Diaz also asserts that the State failed to lay a proper foundation for admitting into evidence its Exhibit 6, which was admitted over objection. State's Exhibit 6 is a certificate generated by the manufacturer of the Intoxilyzer 5000, certifying to the machine's calibration after being repaired. The exhibit was offered to provide an explanation as to why the machine's certificate of inspection was unavailable for the calendar quarter following that in which Diaz's breath test was performed. Diaz appears to argue that without the certificate, the breath test results were inadmissible.

As best we understand it, Diaz's contention is that the certificate was not admissible because no foundation was laid by someone with personal knowledge that it was in the manufacturer's regular course of business to create the document at the time the machine was repaired and calibrated.

Sergeant J. T. Strickland, commander of the DUI task force, testified he was responsible for maintaining the records for the five Gwinnett County Intoxilyzer 5000 machines and ensuring that maintenance and quarterly inspections are completed. He personally investigated the malfunctioning machine, sent it to the manufacturer for repair, and received it back, along with the certificate of calibration. It was the police department's practice to receive a certificate from the manufacturer each time a machine was returned from repair and to maintain these certificates. Although Diaz objected that it was necessary for a witness identifying business records to have personal knowledge of the correctness of the records or to have made the entries himself, that is not the law. The fact that the witness has no personal knowledge of the entries does not affect their admissibility, although it might affect the weight afforded them. *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171 (1) (460 SE2d 809) (1995).

Even without the certificate, the results of the breath tests would have been admissible. Under OCGA § 40-6-392 (a) (1) (A), a breath test must be performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine operating with all its components attached and in good working order. OCGA § 40-6-392 (f) provides that a properly prepared and executed inspection certificate is admissible to satisfy this requirement. But the requirements of OCGA § 40-6-392 (a) (1) (A) may be satisfied even without admission of such certificates. *Gidey v. State*, 228 Ga. App. 250, 251-252 (1) (491 SE2d 406) (1997).

Here, as in *Gidey*, the individual who conducted the breath tests, Deputy Sheriff Derrick Preston, testified that he was trained and certified to perform the test, and his operator's permit was placed in evidence. He testified that the testing methods were those approved by the GBI; that he had used the machine before and after Diaz's tests; that the machine functioned properly when testing Diaz,

appeared to be in good working order, and did not appear to have any parts missing; and that the machine performed the usual self-tests before testing Diaz and revealed no problems. This evidence satisfied the requirements of OCGA § 40-6-392 (a) (1) (A). *Gidey*, supra. The trial court's admission of the breath test results into evidence was therefore proper.

4. Diaz maintains that because OCGA § 40-5-1 (15) defines a "resident" to exclude undocumented aliens for purposes of Chapter 5 of Title 40, he was not a Georgia "resident" when he was arrested, and he therefore was not required to obtain a Georgia driver's license within 30 days of moving here. We do not agree.

OCGA § 40-5-1 (15) does state that "no person shall be considered a resident for purposes of this chapter unless such person is either a United States citizen or an alien with legal authorization from the U. S. Immigration and Naturalization Service." And Diaz testified that at the time of his arrest he "didn't have papers" and thus could not get a driver's license.

But this did not create an exception that gave Diaz the right to drive without a valid Georgia license. Our Code also provides: "No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license under this chapter for the type or class of vehicle being driven." OCGA § 40-5-20 (a). The cardinal rule in interpreting statutes is to discern the intention of the General Assembly. *Johnson v. State*, 267 Ga. 77, 78 (475 SE2d 595) (1996). And statutes relating to the same subject matter must be construed together and harmonized. *Joiner v. State*, 239 Ga. App. 843, 845 (522 SE2d 25) (1999). We agree with the State that, reading the two statutes in pari materia, the intention of the General Assembly was not to exempt undocumented aliens from the requirement of obtaining a Georgia driver's license but to permit visitors, with no intention of becoming residents, to drive here without obtaining a Georgia license. Undocumented aliens who have been living in Georgia for five years, like Diaz, are simply prohibited from driving if they cannot obtain a valid Georgia driver's license.

To interpret the statutes otherwise would create an absurdity: Citizens and documented aliens would be required to obtain valid Georgia licenses after living in this state for 30 days, while undocumented aliens would be permitted to drive forever without a valid Georgia license. The trial court's finding of guilt on this charge was proper.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED JULY 27, 2000.

*Manuel S. Campano*, for appellant.
*Gerald N. Blaney, Jr., Solicitor, Emilien O. Loiselle, Jr., Jeffrey P.
Kwiatkowski, Assistant Solicitors*, for appellee.