## A00A2119. STONE v. THE STATE.
### (546 SE2d 787)

MIKELL, Judge.

After a bench trial, Rachel S. Stone was convicted of driving under the influence of alcohol to the extent that she was a less safe driver.[1] Stone appeals her conviction, enumerating as error the sufficiency of the evidence and the trial court's exclusion of her expert's testimony regarding the Intoxilyzer 5000. We affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict.[2] We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

Viewed in a light most favorable to the verdict, the evidence shows that at approximately 2:00 a.m. on October 22, 1998, Officer C. B. Johnson was assigned to a vehicle checkpoint location on Peachtree Road. At least five to six other officers were also working the location. All of the officers wore orange police vests and used flashlights to direct each car to the checkpoint. Before reaching the officers, drivers were alerted to the checkpoint by a sign that read, "proceed ahead; vehicle checkpoint; prepare to stop." Johnson testified that the average driver decreased his speed after passing the sign, then slowly came to a stop.

Johnson noticed Stone approaching the checkpoint because she did not decrease her speed. He testified that while signaling her to stop, he jumped out of the path of her car because he thought she might hit him. Johnson and the other officers yelled at Stone to stop the vehicle. Stone finally stopped approximately 75 feet past the checkpoint.

Johnson smelled a strong odor of alcohol emanating from Stone as she rolled down her window. When asked if she had been drinking, Stone said she had not. She explained that she did not stop because she did not see the sign. As a basic preliminary test, Johnson asked her to recite the alphabet from C to Q. Stone was unable to follow his directions.

Johnson told Stone to move her car to the side of the road and asked her to walk across the street with him. Johnson testified that it was necessary to cross the street because he wanted the videocamera in his car to record their interaction, including their conversations.

---

[1] OCGA § 40-6-391 (a) (1).
[2] *Shabazz v. State*, 229 Ga. App. 465 (1) (494 SE2d 257) (1997).
[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

As they walked across the street, Stone was unable to answer simple questions. Once they reached the other side, Johnson activated the videocamera from an on/off switch located on his gun belt. Again, Johnson asked Stone to recite the alphabet from C to Q, and she was unable to do so. Johnson attempted to conduct the horizontal gaze nystagmus sobriety test on Stone, but she could not comply with his directions. Stone's eyes were bloodshot and red, and she was swaying, disoriented, and confused. Before Johnson could conduct the walk and turn test, one-leg stand test, and the portable breath test, Stone walked away from him into the street. As she crossed the street, Johnson warned Stone that she was going to get hit by traffic, but she continued to walk toward her friend, who was a passenger in the car. Johnson followed her.

Though they were out of video range, the camera recorded their conversation. Johnson asked Stone if she was willing to participate in the field sobriety evaluations. He testified that she appeared confused and disoriented and could not make a decision. Finally, she said she was not going to participate.[5] After she refused the evaluations, he placed her under arrest for DUI. The videotape, which was played during the trial and admitted into evidence, was consistent with Johnson's testimony about his observations of Stone. Johnson testified that based on his observations of Stone, he did not feel that she could safely drive.

1. In her first enumeration of error, Stone contends that the evidence is insufficient to support her conviction. We disagree.

Stone was charged with violating OCGA § 40-6-391 (a) (1), which provides, "A person shall not drive or be in actual physical control of any moving vehicle while [u]nder the influence of alcohol to the extent that it is less safe for the person to drive." Since there was no dispute that Stone was driving, the state was simply required to show that she had consumed alcohol and was a less safe driver as a result of that alcohol.[6] This Court has held that opinion testimony from police officers may be offered to make this showing.[7] Also, the state is not required to prove the results of a breath test to make the showing.[8]

In *Waits v. State*,[9] this Court found that an officer's testimony that the suspect had red, glassy eyes, slurred speech, and a strong

---

[5] Johnson testified, and the videotape confirms, that Stone's passenger suggested that she participate in the tests.

[6] *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998).

[7] Id.

[8] See *Tomko v. State*, 233 Ga. App. 20, 21 (1) (503 SE2d 300) (1998) (if the state were required to prove the results of a breath test, every case in which the court suppresses the test would be dismissed).

[9] Supra.

odor of alcohol on his breath and that he was unable to maintain his balance was sufficient to authorize a conviction under OCGA § 40-6-391 (a) (1).[10] Similarly, in *Moore v. State*,[11] this Court held that "no documentary evidence of intoxication was required."[12] Instead, the evidence was sufficient to establish a violation of OCGA § 40-6-391 (a) (1) where the officer opined that the defendant was driving under the influence of alcohol to the extent that it was less safe for him to drive. The officer in *Moore* also noticed the defendant's slurred speech, red, glassy eyes, loudness and boisterousness and smelled alcohol.[13]

In this case, Johnson testified that he smelled a strong odor of alcohol on Stone's breath and that her eyes were bloodshot and red. Johnson also testified, and the videotape confirmed, that Stone could not recite the alphabet as instructed, swayed, and appeared disoriented and confused. Finally, based on his observation of Stone, Johnson opined that it was "absolutely not" safe for her to drive. Thus, following *Waits* and *Moore*, we find that Johnson's testimony about his observations of Stone, coupled with his opinion that she was less safe to drive, constituted sufficient evidence to authorize the trial court's finding of guilt.

As the defendant argues in her motion for reconsideration, the officer never expressly opined that the driver's "less safe" condition was due to the consumption of alcohol. But there is in the record some circumstantial evidence that Stone had consumed alcohol. The officer testified that, when he first stopped the vehicle and the defendant lowered her window, he smelled a strong odor of alcohol "coming from the vehicle." Later he stated at three points in his testimony that he continued to smell a "strong odor of alcohol on her breath." The evidence, including the videotape shown to the jury, was overwhelming that the defendant was impaired and was an unsafe driver. We hold that it was proper for the trial judge, sitting as the trier of fact, to infer from those two circumstances, the strong odor of alcohol and the obvious impairment, that the defendant was "[u]nder the influence of alcohol to the extent that it [was] less safe for the person to drive."[14]

Stone argues that *Clay v. State*[15] supports the reversal of her conviction. The facts in *Clay*, however, are distinguishable. The

---

[10] Although this Court found the evidence was sufficient to sustain the conviction in *Waits*, the failure to charge the jury on circumstantial evidence was deemed reversible error. *Waits*, 232 Ga. App. at 359 (2).

[11] 234 Ga. App. 332 (506 SE2d 685) (1998).

[12] Id. at 334 (3) (c).

[13] Id.

[14] OCGA § 40-6-391 (a) (1).

[15] 193 Ga. App. 377 (387 SE2d 644) (1989).

defendant's DUI conviction was reversed in *Clay* because the officer testified that the defendant's speech was not slurred, he was not staggering, and that there was nothing unusual or erratic about his driving.[16] The only evidence of guilt was the officer's testimony that the defendant's eyes were glassy and he had an odor of alcohol on his breath, which was contradicted by the defense witnesses' testimony. In this case, as stated previously, the record shows that Stone was initially detained because of her erratic and unusual driving. Specifically, she drove through the checkpoint and almost hit Johnson. Also, Stone was swaying, disoriented, and confused. Finally, she was unable to answer simple questions. Accordingly, unlike *Clay*, the overwhelming evidence of guilt in this case supports the conviction.

2. Stone argues that the state relied upon her alleged refusal to take the breath test as evidence of the presence of alcohol. For this reason, she contends, the trial court abused its discretion when it precluded her expert witness' testimony about the Intoxilyzer 5000 and the proper procedures pertaining to refusals of the breath test.[17] The record does not support Stone's contention that her refusal to take the breath test was the crux of the state's case against her. As stated in Division 1, the testimony of Officer Johnson and the evidence on the videotape were sufficient to authorize Stone's conviction. We note the conflicting evidence about Stone's refusal to take the breath test when asked if she wished to do so at the pretrial detention center.[18] On appeal, however, "[t]he credibility of witnesses and the weight accorded their testimony rest with the trier of fact. . . ."[19] Thus, "the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous."[20]

Though the "admissibility of evidence is a matter which rests largely within the sound discretion of the trial court,"[21] we note that "Georgia courts favor the admission of any relevant evidence, no matter how slight its probative value."[22] Further, "greater latitude is per-

---

[16] Id. at 379 (2).

[17] Defense counsel proffered that Dr. Citron was an expert in the Intoxilyzer 5000 and could testify about the procedure pertaining to refusals to take the breath test.

[18] After watching the videotape, Stone admitted during cross-examination that she told Officer Johnson that she would not take the breath test when initially asked if she wished to do so, but she asserted during the trial that she did not understand what was asked. Officer Johnson testified that when Stone was given the option to take the test while at the pretrial detention center, she made no attempt to participate. Stone testified, however, that she was never given the opportunity to take the test at the pretrial detention center.

[19] (Citations and punctuation omitted.) *Taylor v. State*, 239 Ga. App. 858 (522 SE2d 266) (1999).

[20] (Citations and punctuation omitted.) *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655) (1996).

[21] (Citation omitted.) *Kellogg v. State*, 233 Ga. App. 817, 819 (505 SE2d 794) (1998).

[22] *Evans v. State*, 233 Ga. App. 879, 881 (3) (506 SE2d 169) (1998).

missible in the introduction of evidence in a bench trial."[23] We are surprised that the trial court in a bench trial in a criminal case was not more liberal in admitting whatever evidence, short of a filibuster, the defense wished to proffer. When making its decision, of course, the court would consider only the admissible evidence.[24] But giving the defendant at a bench trial the benefit of close calls on the admissibility of evidence precludes the possibility of a reversal on appeal. Nonetheless, in light of the overwhelming evidence of Stone's guilt in this case, we cannot find that the trial court's exclusion of Stone's expert testimony on the breath test requires the reversal of Stone's conviction. At most, the exclusion of the evidence was harmless error. Accordingly, we affirm.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED DECEMBER 15, 2000 —
RECONSIDERATION DENIED FEBRUARY 22, 2001.

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor,* for appellant.

*Joseph J. Drolet, Solicitor, Dawn Belisle-Skinner, Assistant Solicitor,* for appellee.


---

[23] Id.
[24] See *Schaffer v. City of Marietta,* 220 Ga. App. 382, 384 (2) (469 SE2d 479) (1996); *Pardo v. State,* 215 Ga. App. 317 (450 SE2d 440) (1994).