## A01A0715. BAGWELL v. THE STATE.
### (547 SE2d 377)

MIKELL, Judge.

A jury convicted Robert Bagwell of driving under the influence of alcohol ("DUI") to the extent it was less safe for him to drive[1] and driving while his alcohol concentration was more than 0.10 grams (a "per se" violation).[2] On appeal, Bagwell argues that his two prior DUIs and his breath test results were erroneously admitted in evidence. He also challenges the denial of his motion for directed verdict on the per se charge. We affirm.

Sergeant Craig Cannon of the City of Conyers Police Department testified that on March 13, 1998, he observed Bagwell's vehicle exit a parking lot, cross one lane of traffic, and pull in front of a car in the

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (5).

next lane, nearly causing a wreck. When Cannon stopped Bagwell, the officer noticed a strong odor of alcohol emanating from his person. Bagwell stated that he had consumed one beer. Cannon asked him to perform field sobriety tests, including the one-leg stand and the walk and turn tests. Bagwell's performance indicated that he was impaired, so Cannon administered the alco-sensor test.

Bagwell tested positive for alcohol. Cannon then placed him under arrest, handcuffed him, put him in the back of his patrol car, and read him the implied consent notice. Bagwell agreed to take a state-administered breath test. Cannon secured Bagwell's vehicle, transported him to jail, and presented him to Deputy Dexter Harris, who performed the test at 11:03 p.m. The results were 0.108. A second test performed three minutes later measured Bagwell's blood alcohol concentration as 0.107.

1. Bagwell argues that the trial court should have excluded the results of his Intoxilyzer 5000 test because he was not observed continuously for 20 minutes before the test was administered to ensure that he did not burp or belch, which would have contaminated the breath sample by leaving residual alcohol in his mouth.

A state-administered breath test is admissible in evidence if the state proves that it was conducted in accordance with "methods approved by the Division of Forensic Sciences [DFS] of the Georgia Bureau of Investigation."[3] The training manual DFS issued in 1997 concerning the Intoxilyzer, which Bagwell introduced into evidence during the hearing on his motion in limine, requires those who operate the machine to "adhere to proper testing methods and procedures."[4] Those procedures state:

> All breath tests will be preceded by a twenty (20) minute waiting period. During this waiting period the subject must be in a controlled environment and be prohibited from consuming any material that contains or might contain alcohol. Should the subject vomit during the waiting period, this should be noted. Allow the subject to recover . . . and restart the twenty minute waiting period. The twenty minute waiting period will be satisfied when the above conditions are met.[5]

Even if the 20-minute observation requirement constitutes a "method approved" by the DFS, the state proved that the rule was satisfied in this case. Of the twenty minutes preceding the test,

---

[3] OCGA § 40-6-392 (a) (1) (A).
[4] Intoxilyzer 5000 Georgia Operator's Training Manual, p. 22.
[5] Id. at Appendix C.

Bagwell spent ten minutes handcuffed in the back of the patrol car while Cannon secured the scene and an additional ten minutes en route to the jail with Cannon. Clearly, during the initial ten minutes, Bagwell was in a controlled environment where he could not consume alcohol. There is no evidence that he regurgitated. That is all the procedure requires; it references no other oral emanations. "[T]he failure to continuously watch [Bagwell] for 20 consecutive minutes prior to the breath test does not require exclusion of the test results."[6] We find that the state substantially complied with the 20-minute rule.[7] It follows that the trial court did not err in denying Bagwell's motion in limine and in admitting the breath test results.

2. Bagwell next complains that the admission of evidence of his two prior DUIs as similar transactions was an error of constitutional magnitude. He asserts that the trial court allowed the state to establish the similarity of the prior offenses by introducing a certified copy of each disposition. This is incorrect.

The circumstances surrounding the commission of each prior offense were established by the testimony of the respective arresting officer. Accordingly, this case differs from *Stephens v. State*,[8] in which the state offered no evidence of the commission of the prior crime other than the certified copy of the conviction. Further, as Bagwell had entered a plea of nolo contendere to the first offense, the trial court properly ruled that the state could not introduce evidence concerning the criminal disposition of that offense.[9] Finally, the court correctly determined that the state met its burden of proving the similarity of the offenses. On the first two occasions, Bagwell was stopped late at night in Gwinnett County for failure to maintain lane. In this instance, he was observed driving erratically. On all three occasions, he was arrested based on his performance on field sobriety tests. In any event,

> [e]vidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so.[10]

---

[6] (Punctuation omitted.) *Brunson v. State*, 248 Ga. App. 402, 404 (1) (544 SE2d 217) (2001), citing *Berkow v. State*, 243 Ga. App. 698, 701 (534 SE2d 433) (2000) (physical precedent only), cert. denied, 243 Ga. App. 905 (2000). See also *Klink v. State*, 272 Ga. 605, 607 (2) (533 SE2d 92) (2000) (the state complied with the requirement by showing that the defendant was in custody for over 20 minutes before being tested).

[7] *Brunson*, supra; *Berkow*, supra at 701.

[8] 261 Ga. 467, 468 (6) (405 SE2d 483) (1991).

[9] *Harris v. State*, 210 Ga. App. 366, 368 (436 SE2d 231) (1993).

[10] *Smith v. State*, 236 Ga. App. 548, 552 (3) (512 SE2d 19) (1999), rev'd on other

The decision to admit prior similar transaction evidence is within the sound discretion of the trial court and will not be disturbed absent abuse.[11] The trial court did not abuse its discretion in admitting the challenged evidence.

3. Finally, Bagwell contends that the trial court erred in denying his motion for directed verdict on the per se charge. Bagwell moved for a directed verdict on the grounds that the evidence showed that the Intoxilyzer 5000 had a margin of error of 0.01 grams. Thus, he argued, the evidence was consistent with a finding that his blood alcohol concentration was 0.098. However, we have repeatedly held that an Intoxilyzer's margin of error relates to the weight given to the test results rather than to their admissibility.[12] We have also held that the results are direct evidence of guilt.[13]

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Bagwell] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*[14] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[15]

The properly admitted Intoxilyzer results provided ample evidence of Bagwell's guilt of the per se charge. It follows that the trial court did not err in refusing to grant his motion for a directed verdict of acquittal.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2001.

*Spruell, Taylor & Associates, Billy L. Spruell, Charles T. Magarahan,* for appellant.

---

grounds, 272 Ga. 83 (526 SE2d 59) (2000). See also *Lucas v. State,* 234 Ga. App. 534, 536 (2) (507 SE2d 253) (1998); *Fields v. State,* 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996); *Okross v. State,* 210 Ga. App. 132, 133-134 (2) (435 SE2d 454) (1993).

[11] *Brooks v. State,* 230 Ga. App. 846 (1) (498 SE2d 139) (1998).

[12] *Cawthon v. State,* 235 Ga. App. 791 (1) (510 SE2d 586) (1998); *Scheipers v. State,* 234 Ga. App. 112, 113 (505 SE2d 835) (1998) (physical precedent only); *Lattarulo v. State,* 261 Ga. 124, 126 (401 SE2d 516) (1991).

[13] *Cawthon,* supra at 791 (3).

[14] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[15] (Citation omitted.) *Horne v. State,* 237 Ga. App. 844-845 (1) (517 SE2d 74) (1999).

*Richard R. Read, Solicitor, Heather C. Waters, Assistant Solicitor*, for appellee.