## A02A2112. VIAU v. THE STATE.
(579 SE2d 52)

PHIPPS, Judge.

After a bench trial, Shearron Viau was convicted of driving under the influence of alcohol to the extent it was less safe for her to drive,[1] driving with an alcohol concentration of 0.08 grams or more,[2] and failing to maintain lane.[3] On appeal, she challenges the sufficiency of the evidence to support her convictions, the exclusion of certain expert testimony, and the admission of the results of the State-administered breath test. Finding no reversible error, we affirm.

1. Viau contends that the evidence was insufficient to support her convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the judgment, and the defendant no longer enjoys the presumption of innocence.[4]

An appellate court does not weigh the evidence or determine witness credibility but only determines that the evidence to convict is sufficient under the standard of *Jackson v. Vir-*

---

[1] OCGA § 40-6-391 (a) (1).
[2] OCGA § 40-6-391 (a) (5).
[3] OCGA § 40-6-48 (1).
[4] *Diaz v. State*, 245 Ga. App. 380, 381 (1) (537 SE2d 784) (2000).

*ginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicting testimony is a matter of credibility for the finder of fact to resolve. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make, out the State's case, we will uphold the factfinder's verdict. [Cit.][5]

The State presented the testimony of a police officer who had been assigned to a DUI task force for about six years. At approximately 1:00 a.m. on August 31, 2001, the officer saw Viau's car drive in and out of its lane and followed it for about two miles, during which time it continued to weave, and at times, occupied more than one lane. The officer stopped the car, approached Viau, and questioned her. He noticed that Viau's speech was slurred, that her eyes were bloodshot, and that she emitted a strong odor of alcohol when she spoke. Viau told the officer that she had consumed three glasses of wine that evening and was "drunk." She asked whether the officer could follow her or take her home. He told her that would not be an option. After exiting her vehicle, she was unsteady on her feet. Viau refused to take the alco-sensor test. Based on his observations, training, and experience, the officer concluded that Viau was under the influence of alcohol to the extent that she was a less safe driver and placed her under arrest. He then read Viau the implied consent notice, and she agreed to submit to a breath test. An Intoxilyzer 5000 registered her alcohol concentration at 0.161 and 0.171 grams.

(a) OCGA § 40-6-391 (a) (1) makes it unlawful for a person to drive a car while under the influence of alcohol to the degree that it is less safe for that person to drive. The evidence as set forth above was sufficient to allow a rational trier of fact to conclude that Viau was a less safe driver than she would have been had she not been under the influence of alcohol.[6]

(b) OCGA § 40-6-391 (a) (5) makes it unlawful for a person to drive a car while that person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving. Ample evidence supported Viau's conviction for violating that Code section.[7]

(c) OCGA § 40-6-48 (1) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Arguing that she did not violate that Code section, Viau points to the arresting officer's testimony

---

[5] (Punctuation omitted.) *Childress v. State,* 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

[6] See id.; *Parker v. State,* 249 Ga. App. 530, 531 (549 SE2d 154) (2001).

[7] See *Bagwell v. State,* 248 Ga. App. 806, 809 (3) (547 SE2d 377) (2001).

that her driving had not compromised the safety of any other car. Further, pointing to her trial testimony that condominiums were being constructed at the point where she was stopped, Viau claims that she was driving outside her lane to avoid barrels placed along the edge of the road.

Weaving without reason into nearby lanes violates OCGA § 40-6-48 (1).[8] Viau was charged with failure to maintain lane by "fail[ing] to drive a vehicle as nearly as practicable entirely within a single lane." The trial court was authorized to reject Viau's explanation for her manner of driving and to accept the officer's opinion that her alcohol consumption had impaired her driving.[9]

The case of *Allenbrand v. State*,[10] cited by Viau, does not demand a contrary result because the question of whether there was sufficient evidence to convict the defendant for failure to maintain lane was not presented there. Rather, *Allenbrand* determined merely that an arresting officer's opinion that a defendant's weaving had not posed a danger to other traffic was irrelevant in determining whether the officer had probable cause to stop the vehicle for failure to maintain lane.

2. Viau contends that the trial court abused its discretion by excluding, as irrelevant, expert evidence that she claims would have attacked the results of her breath tests. Evidence challenging breathalyzer results relates to the weight of the results, but not to the admissibility.[11] "An accused may always introduce evidence of the possibility of error or circumstances that might have caused the machine to malfunction,"[12] so long as the evidence is relevant.[13] To be relevant, said evidence must raise a reasonable inference of machine malfunction.[14] The decision to exclude expert testimony lies within the trial court's sound discretion, and this court will not disturb it absent a clear abuse of discretion.[15]

Viau sought to show that the machine presented erroneous results through the testimony of Joseph Citron, M.D., who was trained in the use of the Intoxilyzer 5000 and the scientific principles underlying its use. In a proffer, Citron stated that if the subject's body temperature is "higher than 98.6," then the machine would

---

[8] See *Davis v. State*, 236 Ga. App. 32, 33 (1) (510 SE2d 889) (1999).

[9] See *Childress*, supra; *Stone v. State*, 248 Ga. App. 190, 191 (1) (546 SE2d 787) (2000).

[10] 217 Ga. App. 609, 610 (1) (458 SE2d 382) (1995).

[11] *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991).

[12] Id.

[13] *Knapp v. State*, 229 Ga. App. 175, 177 (2) (493 SE2d 583) (1997); OCGA § 24-2-1 (evidence must relate to the questions being tried and bear upon them either directly or indirectly; irrelevant matter should be excluded).

[14] See *Knapp*, supra; OCGA § 24-2-1.

[15] *Mimms v. State*, 254 Ga. App. 483, 486 (2) (562 SE2d 754) (2002); *Knapp*, supra at 177.

present a result higher than the subject's actual alcohol concentration "because at a higher temperature air can hold more gas; can hold more alcohol." Citron stated that the research he had reviewed showed a linear correlation between an elevated body temperature and an artificially high result. But he could not determine how inflated a result would be without knowing the subject's actual body temperature. He admitted, "I have no knowledge of what [Viau's] body temperature was that evening."

Defense counsel responded to the court's concerns about the absence of any evidence of Viau's temperature by pointing to Viau's testimony that it had been "hot" at around 9:00 on the evening in question and that she had gone swimming shortly before she was stopped. Defense counsel then pointed out that Citron had testified that a hot environment and swimming were two circumstances that could elevate a person's body temperature.

The trial court ruled that the testimony regarding the effect of an elevated body temperature on the Intoxilyzer 5000 was not relevant because there was no evidence of Viau's body temperature. While there was circumstantial evidence that Viau may have had an elevated body temperature earlier, notably, there was no proffer from the expert that either of the two cited circumstances had caused Viau's temperature to remain elevated at the time she was tested. Nor was there a proffer of Viau's normal body temperature, such as would show that had it been elevated at all, it would have exceeded 98.6 degrees. Furthermore, with no margin of error proffered, there was no showing that a high body temperature could have accounted for an alcohol concentration result that was elevated by 0.081 grams, as would have been required to find harm in this case, where Viau's breath samples exceeded twice the legal limit.

Moreover, Viau presented an independent calculation of her alcohol concentration by Citron using the Widmark formula, which reestimates alcohol concentration. But even that evidence showed that her alcohol concentration was above the legal limit. Under the circumstances of this case, where any link between the proffered testimony and machine malfunction is highly tenuous and where the possibility of harmful error requires sheer speculation, we conclude that Viau has failed to demonstrate reversible error.[16]

*Yount v. State*,[17] cited by Viau, does not demand a contrary ruling. There, we determined that the trial court erred in excluding as irrelevant expert evidence of the "absorption and elimination of alcohol in the body," where the proffered testimony was that (a) the

---

[16] See *Knapp*, supra; see also *Evans v. State*, 253 Ga. App. 71, 77 (2) (b) (558 SE2d 51) (2001).
[17] 249 Ga. App. 563, 565 (1) (548 SE2d 674) (2001).

Intoxilyzer 5000 reading was elevated because of that defendant's activities earlier that evening, and (b) the Widmark formula would yield a different alcohol concentration. Here, unlike in *Yount*, the record showed that the connection between the proffered testimony and any possible error in the results of Viau's tests was too remote and uncertain. And, unlike the defendant in *Yount*, Viau was permitted to challenge the State's evidence with expert evidence that calculated her alcohol concentration using the Widmark formula.

3. Viau claims that the trial court erred in denying her motion to suppress the results of her breath test because the officer did not read the implied consent notice to her and because the officer misled her and gave her hope of benefit if she submitted to the test. In reviewing the grant or denial of a motion to suppress, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.[18]

(a) Although Viau testified that the officer did not read the implied consent notice to her, the arresting officer's testimony to the contrary authorized the trial court, sitting as the trier of fact, to resolve the evidentiary conflict adversely to her.

(b) Conceding that there is no right to have counsel present when a person is asked to submit to a chemical test and when asked to comply with the implied consent law,[19] Viau contends that the record establishes that the arresting officer "misled her into believing that she had such a right and[ ] coerced her into submitting to the test." Citing *State v. Boger*,[20] Viau argues that the trial court should have excluded the results of her breath tests.

In *Boger*, at the scene of the traffic stop, the arresting officer misled the defendant to believe that he would have the right to counsel at the time of the State's chemical test of his breath, although no such right existed. Later, relying on that belief, the defendant refused to submit to that test without an attorney. We concluded that under those circumstances, the trial court did not err in excluding the defendant's refusal. The trial court in this case determined that *Boger* was not controlling.

Relying on *Boger*, Viau maintains that a portion of her testimony establishes that her breath test results should have been suppressed because she was misled. But even if certain statements that Viau claims she made at the time of testing at the detention center are viewed as a request for counsel, her own account further reveals that the officer informed her that she would be able to contact an attorney

---

[18] *Leiske v. State*, 255 Ga. App. 615 (565 SE2d 925) (2002).
[19] *Rawl v. State*, 192 Ga. App. 57, 58 (4) (383 SE2d 903) (1989).
[20] 253 Ga. App. 412, 413 (2) (559 SE2d 176) (2002).

"in a little bit." Nothing in the record demonstrates that the officer somehow misled her to believe that she was entitled to an attorney at the time of the breath test.

In her reliance on *Boger*, Viau also seems to claim that her submission to the breath test, because it followed the officer's supposed "promise" of counsel, gave her hope of benefit and was thus coerced. We do not find that any statement the officer made to Viau about later access to counsel rises to the level of giving her "hope of benefit."[21] Access to advice of legal counsel at the appropriate time is a right to which the defendant is entitled.[22] We are not convinced by Viau's argument that in this case the officer coerced her by telling her that she would be entitled to advice of counsel soon.

Furthermore, the officer testified that, at the scene of the traffic stop, Viau agreed to submit to the State's chemical test of her breath and that she made no other request at that time. He had no recollection that, at the time of testing, Viau asked to call her husband, who was an attorney. Moreover, by Viau's own admission, by the time she asked to call her husband, she already "knew [she] was going to take the test."

Construed most favorably toward upholding the trial court's findings and judgment, the record does not demand a finding that Viau submitted to the test because the officer misled her, gave her hope of benefit, or otherwise coerced her.

*Judgment affirmed. Andrews, P. J., concurs. Mikell, J., concurs specially.*

MIKELL, Judge, concurring specially.

I concur fully in Divisions 1 and 3 and in the judgment. As to Division 2, I believe that the trial court did abuse its discretion by excluding the testimony of the defendant's expert witness, Dr. Citron, regarding the reliability of the machine's results. Georgia law favors the introduction of evidence, especially evidence in a criminal trial which might aid a jury in deciding the weight and credibility to be given to scientific tests. But the error was harmless for the reasons given in the majority opinion: the breath sample showed a blood alcohol concentration of more than twice the legal limit and there was no proffer that the testimony would account for an allegedly erroneous result of that magnitude. Moreover, impeachment of scientific evi-

---

[21] See generally *State v. Roberts*, 273 Ga. 514, 516 (3) (543 SE2d 725) (2001); *Carswell v. State*, 268 Ga. 531, 532 (2) (491 SE2d 343) (1997).

[22] See *Boger*, supra at 413 (1); *Ross v. State*, 254 Ga. 22, 26 (3) (b), n. 3 (326 SE2d 194) (1985) (*Miranda* right to counsel attaches if an accused is in police custody and subjected to police interrogation); *Scanlon v. State*, 237 Ga. App. 362, 363-364 (1) (514 SE2d 876) (1999); *Rawl*, supra.

dence is unlikely to impress a jury when the motorist admits to the arresting officer that the motorist is "drunk."

DECIDED FEBRUARY 21, 2003 —
RECONSIDERATION DENIED MARCH 7, 2003 —

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Joseph J. Drolet, Solicitor-General, Craig E. Miller, Assistant Solicitor-General*, for appellee.