A10A2269. MILLER v. THE STATE.
(706 SE2d 94)

BARNES, Presiding Judge.
A Cherokee County jury found Kenneth A. Miller guilty of driving under the influence of alcohol, failure to maintain lane,

---

speeding, and improper left turn. On appeal, Miller challenges the sufficiency of the evidence and contends that the trial court erred in permitting the arresting deputy to testify regarding how diabetes might affect the results of a State-administered breath test and in failing to give his requested jury charge regarding opinion testimony. For the reasons set forth below, we affirm.

1. Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. *Vadde v. State*, 296 Ga. App. 405 (674 SE2d 323) (2009). We neither weigh the evidence nor assess the credibility of the witnesses, but only determine whether the evidence was sufficient to support the conviction under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Stone v. State*, 248 Ga. App. 190 (546 SE2d 787) (2000). "The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

Viewed in the light most favorable to the verdict, the evidence showed that at approximately 10:00 p.m. on August 17, 2007, a deputy with the Cherokee County Sheriff's Department was traveling northbound on Bells Ferry Road approaching Kellogg Creek Road. Bells Ferry Road was comprised of four lanes of travel, with two northbound lanes and two southbound lanes. At the intersection of Bells Ferry Road and Kellogg Creek Road, there was a traffic light and an additional center lane for turning left onto Kellogg Creek Road. As the deputy merged into the center turn lane, a vehicle traveling on Bells Ferry Road in the adjacent northbound lane suddenly swerved in front of him, swerved back into its previous position, and stopped at the intersection even though the traffic light was green. Without first merging into the center lane, the vehicle then turned left onto Kellogg Creek Road from the northbound lane, cutting in front of the deputy's patrol car and almost striking a curb.

The deputy turned on the video recording equipment inside his patrol car and followed the vehicle down Kellogg Creek Road, a two-lane roadway. He observed the vehicle cross over the double yellow line in the middle of the road on several occasions, at one point almost striking the curb on the opposite side of the road. The deputy visually estimated the speed of the vehicle at 52-55 mph in a 35 mph zone. Based upon these observations, the deputy stopped the vehicle.

When the deputy approached the vehicle, the driver identified himself as Kenneth Miller and claimed that he had been engaged in a conversation with the passenger in the front seat that had caused him to become inattentive to the road. The deputy could smell alcohol emanating from the vehicle, but Miller denied having consumed any alcoholic beverages. Miller also told the deputy that he

was diabetic and sometimes had trouble with his vision. Based upon his training and experience with diabetic drivers, however, the deputy did not believe that Miller's appearance and behavior were consistent with someone suffering from an impairment caused by diabetes.

The deputy attempted to have Miller blow into his portable alco-sensor, but Miller refused to blow directly into the machine or to blow with sufficient volume, and thus prevented a reading of his breath for the presence of alcohol. Nevertheless, during the attempts with the alco-sensor, the deputy could smell alcohol coming from Miller's breath. At that point, the deputy had Miller exit from his vehicle and performed a series of field sobriety tests. The deputy administered the horizontal gaze nystagmus test, noting six out of six clues of impairment; the walk and turn test, noting five out of eight clues of impairment; and the one-leg stand test, noting two out of four clues of impairment. The deputy also administered the Romberg test, noting that Miller was unsteady on his feet and failed to follow all of the instructions.

Ultimately, Miller admitted to the deputy that he had been drinking that night. Based upon his observations of Miller and the field sobriety tests, the deputy arrested Miller for driving under the influence of alcohol. After securing Miller's consent to a State-administered breath test, the deputy transported Miller to a mobile command center at a nearby traffic roadblock that housed an Intoxilyzer 5000. Both of Miller's breath samples indicated a blood alcohol concentration of greater than 0.08 grams. The breath test was administered approximately 30 minutes after the initial traffic stop.

Miller was charged by accusation with driving under the influence of alcohol to the extent it was less safe for him to drive ("DUI — Less Safe"); driving with an alcohol concentration of 0.08 grams or more within three hours of driving ("DUI — Per Se"); failure to maintain lane; speeding; and improper left turn. At trial, the deputy testified to the events as set out above, and the State introduced into evidence the results from the breath test and the video recording of the traffic stop. Miller did not testify or present any witnesses on his own behalf. After hearing all of the evidence, the jury found Miller guilty of the charged offenses. The trial court merged the DUI — Less Safe conviction into the DUI — Per Se conviction and sentenced Miller accordingly. This appeal followed.

Miller contends that the State failed to prove his guilt beyond a reasonable doubt. His primary contention is that there was insufficient evidence that he was driving under the influence of alcohol. We

disagree.[1] A person is guilty of DUI — Per Se if he drives a car while his blood alcohol concentration is 0.08 grams or more at any time within three hours after such driving. OCGA § 40-6-391 (a) (5). See *Viau v. State*, 260 Ga. App. 96, 97 (1) (b) (579 SE2d 52) (2003). The Intoxilyzer 5000 test results, combined with the deputy's testimony, provided ample evidence to support Miller's conviction of DUI — Per Se. See *Jacobson v. State*, 306 Ga. App. 815, 816 (1) (703 SE2d 376) (2010); *Totino v. State*, 266 Ga. App. 265, 266 (1) (a) (596 SE2d 749) (2004); *Viau*, 260 Ga. App. at 97 (1) (b); *Bagwell v. State*, 248 Ga. App. 806, 809 (3) (547 SE2d 377) (2001).

Miller suggests that the test results from the Intoxilyzer 5000 may have been affected by potential interference from other electronic devices, given that the machine was housed in a mobile command center. Miller provides no evidence to support his speculative assertion, and the deputy testified without contradiction that the Intoxilyzer 5000 displays an error message if the test is affected by radio interference and that no such message was displayed in this case. In any event, "evidence of the possibility of error or circumstances that might have caused the machine to malfunction . . . would relate to the weight rather than the admissibility of breathalyzer results." *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991). See *Stewart v. State*, 280 Ga. App. 366, 367 (1) (634 SE2d 141) (2006).

As to Miller's remaining convictions for failure to maintain lane, speeding, and improper left turn, the deputy's testimony concerning his observations of Miller's driving was sufficient to support the jury's verdict on these counts. See OCGA §§ 40-6-48 (1); 40-6-120 (2) (B); 40-6-181 (b). See also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). While Miller notes that the deputy did not use a radar or laser device to determine the speed he was traveling, "[a]n officer's estimate of speed is sufficient to support a conviction on a speeding violation." *Stone v. State*, 257 Ga. App. 492, 493 (1) (571 SE2d 488) (2002). And issues regarding the credibility of the deputy were for the jury, rather than this Court, which considers only the sufficiency, not the weight, of the evidence. See *Cross v. State*, 213 Ga. App. 275 (444 SE2d 589) (1994). The evidence thus was sufficient to authorize Miller's convictions under the standard enunciated in *Jackson*, 443 U. S. 307.

2. Miller also maintains that the trial court should not have allowed the deputy to testify concerning diabetes and its possible

---

[1] Much of Miller's discussion of the evidence pertains to his DUI — Less Safe conviction. But we need not consider the sufficiency of the evidence with respect to that count, since it was merged into his DUI — Per Se conviction. See *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

effects on State-administered breath tests, since the deputy was not a physician or other medical professional. We conclude that Miller failed to properly preserve his objection to the deputy's qualifications.

Miller initially did not object to the deputy's testimony concerning diabetes and its possible effects on field sobriety tests, but did object when the deputy discussed its possible effects on State-administered breath tests, contending that the deputy was not qualified in that area. The State then conducted voir dire of the deputy, after which Miller objected to the deputy's qualifications. The trial court reserved ruling on whether the deputy could testify to afford Miller an opportunity to conduct his own voir dire. After this additional questioning by Miller in which the deputy further discussed his educational background and his specialized training, Miller did not renew his objection to the deputy's qualifications, but instead simply remarked, "Thank you, Officer. That's all." The trial court then asked an additional foundation question, again with no renewed objection from Miller. The deputy went on to testify concerning diabetes on direct and cross-examination without any further objection.

By failing to renew his objection after both defense counsel and the trial court conducted additional voir dire regarding the deputy's qualifications, Miller failed to preserve his enumeration of error. See *Morris v. State*, 212 Ga. App. 42, 43-44 (2) (441 SE2d 273) (1994). See also *In the Interest of M. D.*, 244 Ga. App. 156, 157 (1) (534 SE2d 889) (2000); *Moss v. State*, 216 Ga. App. 711, 712-713 (3) (455 SE2d 411) (1995). Accordingly, this enumeration presents nothing for us to review.

3. Lastly, Miller argues that the trial court erred in failing to give the following jury charge that he requested:

> While a witness may give an opinion as to whether a person was under the influence of alcohol to the extent that it was less safe for him to drive, that opinion, if supported by sufficient evidentiary foundation, does not establish any fact as a matter of law and you the jury are not bound by that opinion.

Miller contends that his sole defense at trial to the DUI charges was to challenge the opinion testimony of the deputy, and that, as a result, the trial court was required to give the requested charge. We are unpersuaded.

"A trial court is not required to instruct the jury in the exact language of a requested charge, and when the principle of law is covered in another charge[,] that is sufficient." *Morrison v. State*,

220 Ga. App. 151, 155 (3) (b) (469 SE2d 686) (1996). Here, the principles contained in the requested charge were substantially covered by the trial court's standard jury charge on the credibility and believability of witnesses, which included the instruction that "[i]t is for you to determine what witness you will believe and which you will not believe," and by the court's charge that "the jury makes decisions as to all matters of fact." Therefore, the trial court committed no error in declining to give the specific charge requested by Miller. See *McGarity v. State*, 212 Ga. App. 17, 21 (5) (440 SE2d 695) (1994).

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED FEBRUARY 2, 2011.

*James K. Luttrell*, for appellant.
*David L. Cannon, Jr., Solicitor-General, Carrie A. McCurdy, Assistant Solicitor-General*, for appellee.