## A01A2211. STINSON v. THE STATE.

(564 SE2d 39)

BLACKBURN, Chief Judge.

Willie L. Stinson was convicted by a jury for trafficking in cocaine. Following the denial of his motion for new trial, he appeals his conviction, arguing that the trial court erred in: (1) not suppressing evidence of an illegal search and seizure; (2) not declaring a mistrial when impermissible character evidence was introduced into testimony; and (3) admitting a prior conviction into evidence. For the reasons set forth below, we affirm.

1. Stinson contends that the trial court erred in not suppressing evidence of an illegal search and seizure. We disagree.

In reviewing a trial court's decision on a motion to suppress, it is the responsibility of this Court to ensure that there was a substantial basis for the trial court's decision. We must construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility must be adopted unless clearly erroneous. *Roberson v. State*.[1]

The record shows that, on June 23, 1997, Sergeant Joseph Artime, an officer with the narcotics division of the DeKalb County Police Department, received a telephone call from Lester Ramey. Ramey, Stinson's father, identified himself as an informant who worked with another DeKalb County narcotics detective. He told Sergeant Artime that, at 5:00 p.m. that afternoon, a subject known as Mick would arrive at the Chevron station on the corner of Flat Shoals and Flakes Mill Roads in a "red type Blazer type vehicle." He also said that the subject, who did not have a driver's license, would probably have someone else driving the vehicle and that he would have between eight and nine ounces of cocaine in his possession.

After confirming through another DeKalb County detective that Ramey had worked on prior occasions as an informant for the narcotics unit, Sergeant Artime and several other detectives set up surveillance at the Chevron station. Shortly after 5:00 p.m., a vehicle matching the description given by Ramey arrived at the station and parked at the pay phones. The passenger in the vehicle got out of the car, entered the store, and then returned to the vehicle with a purchase. The vehicle remained parked in front of the phones, but neither occupant used the phone.

Satisfied that the car and its occupants were those identified by Ramey and concerned that the increasing evening traffic might make possible pursuit of the suspects difficult, the narcotics detectives decided to move in. Sergeant Artime and Detective Andrezejewski pulled their car, a marked police unit, in front of the suspects' vehicle

---

[1] *Roberson v. State*, 230 Ga. App. 179 (495 SE2d 643) (1998).

and blocked its path. Wearing vests and badges which identified them as police officers, they approached the suspects and ordered them to put their hands up; when the suspects failed to comply with the order the officers drew their weapons, opened the car doors, and ordered the suspects from the vehicle.

At this point, the vehicle started rolling backward, and Sergeant Artime told Detective Andrezejewski to jump into the car and stop it. Detective Andrezejewski jumped into the rolling vehicle, put on the brakes, and stopped the car. He then noticed a large paper bag on the floor of the vehicle on the driver's side. Clearly visible in the paper bag were smaller plastic bags filled with what appeared to be cocaine. A field test indicated that the white powder in the bags was in fact cocaine. Stinson and the driver were arrested.

Stinson first argues that the police had no right to stop and search him. This argument lacks merit.

> [W]here an officer has an articulable suspicion that the defendant possesse[s] contraband by reason of the explicit and detailed information provided by an unknown informant, which [has been] verified in part by the observations of the officer, a *"Terry*-type" stop is justified to obtain more information and investigate the circumstances that provoked the suspicion.

*West v. State.*[2] See also *Johnson v. State;*[3] *Sultenfuss v. State.*[4] In the instant case, the officer had reasonable and articulable suspicion, based on both detailed information provided by Ramey, a *known* informant, and the officer's subsequent corroboration at the scene of part of that information, that cocaine would be in the possession of the appellant. *West,* supra at 621. The suspicion was not " 'mere caprice or a hunch or an inclination.' " *Johnson,* supra at 537 (1). Further, and contrary to Stinson's arguments, the investigatory detention was not transformed into an arrest because the officers drew their guns, or because the suspects were required to get out of the vehicle, or because the suspects' vehicle was blocked by the police car. *Sultenfuss,* supra at 48. The brief, investigatory stop was authorized by the facts.

Stinson further maintains that his car was searched and the cocaine was seized in violation of his Fourth Amendment rights. This contention is also without merit. First, as this Court has explained,

> [g]enerally, searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment — subject

---

[2] *West v. State,* 194 Ga. App. 620, 621 (391 SE2d 673) (1990).
[3] *Johnson v. State,* 230 Ga. App. 535 (496 SE2d 785) (1998).
[4] *Sultenfuss v. State,* 185 Ga. App. 47 (363 SE2d 337) (1987).

only to a few specifically established and well-delineated exceptions." Among these exceptions is the "automobile exception" set forth by the United States Supreme Court in *Carroll v. United States*.[5] This exception allows a warrantless search whenever "(1) probable cause to believe that the automobile contains contraband or evidence of a crime conjoins with (2) exigent circumstances making the warrant procedure impractical and causing the resort to an immediate warrantless search to be reasonable and necessary."

(Citation omitted.) *Hall v. State*.[6] Second, when it is immediately apparent that an item is contraband, an officer may seize what is in plain sight if he is in a place in which he is constitutionally entitled to be. *West*, supra at 621.

In this case, exigent circumstances were created when Stinson's vehicle began rolling backward toward the area around the fuel pumps, and the narcotics officer acted legally and responsibly when he jumped into the vehicle and brought it to a stop. Once "constitutionally" in the vehicle, the officer lawfully seized the cocaine, which was clearly visible from his position in the driver's seat.

Stinson attempts to bolster his argument by pointing out that there was a contradiction in the evidence as to whether the vehicle actually rolled backward. The fact that the co-defendant asserted that the vehicle did not roll backward is of no consequence on appeal. "It is the trial court's duty to resolve conflicts in the evidence, and its findings of credibility and fact will not be disturbed on appeal unless they are clearly erroneous." *Wilburn v. State*.[7]

2. Stinson also contends that the trial court erred in not declaring a mistrial after evidence of his character was improperly introduced into testimony. We find no error.

During trial, Ramey, the appellant's father, testified that he was concerned about his son's involvement with drugs and that he had talked with his son about changing his life. When the prosecutor asked Ramey why he had felt it necessary to talk with his son about drug dealing, Ramey replied, "Because he was — he was in a lot of shootouts and robberies." At this point the prosecutor told the witness to stop his testimony, and defense counsel objected. Out of the presence of the jury, defense counsel moved for a mistrial. The court sustained the objection and directed the witness to make no mention of other criminal acts committed by Stinson; however, the court denied the motion for mistrial and gave curative instructions to the

---

[5] *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925).
[6] *Hall v. State*, 176 Ga. App. 428, 430 (2) (336 SE2d 291) (1985).
[7] *Wilburn v. State*, 230 Ga. App. 619 (1) (497 SE2d 380) (1998).

jury after it was reseated. At this point, defense counsel neither requested additional instructions nor renewed the motion for mistrial.

The trial court did not err in denying the motion for mistrial.

> Motions for mistrial are largely in the discretion of the trial judge, especially where the cause of the motion lies in the voluntary remark of a witness not invited by court or counsel, and, where the jury is properly instructed and the remark is not so flagrantly prejudicial as to violate the fair trial rights of the defendant, the court's discretion will not be overturned.

(Punctuation omitted.) *Tutman v. State*.[8] Beyond this, "[s]ince the defendant did not renew his motion after the curative instructions, he cannot complain on appeal." *Jackson v. State*.[9] See also *Burgess v. State*.[10]

3. Lastly, Stinson contends that the trial court erred in admitting into evidence a prior conviction because it was too dissimilar to the crime in the instant case. We find no error in the trial court's admission into evidence of the similar transaction.

"In determining whether a prior transaction is sufficiently similar, courts must focus on the similarities of the occurrences rather than their differences, particularly when the purpose of the evidence is to establish intent, as opposed to identity or criminal signature." *Guild v. State*.[11] With respect to similar transaction evidence in drug cases, it is to be remembered that "[d]rug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson*.[12]

In this case, the State filed notice of its intent to present evidence of similar transactions. The trial court conducted a *Williams*[13] hearing to determine the admissibility of the similar transaction case. The court determined that the transactions were similar because both transactions involved: a confidential informant investigating the sale of drugs; a person participating in the sale of drugs named Mick; and the preparation and sale of cocaine. The court

---

[8] *Tutman v. State*, 164 Ga. App. 400 (296 SE2d 412) (1982).
[9] *Jackson v. State*, 248 Ga. 480, 483 (2) (284 SE2d 267) (1981).
[10] *Burgess v. State*, 149 Ga. App. 630 (255 SE2d 100) (1979).
[11] *Guild v. State*, 236 Ga. App. 444, 445 (2) (512 SE2d 343) (1999).
[12] *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980).
[13] *Williams v. State*, 262 Ga. 640 (409 SE2d 649) (1991).

informed the State that the evidence would be admitted for the limited purpose of showing "similar common design, scheme, plan, and course of conduct and motive." Prior to the introduction of the evidence of similar transactions, the jury was instructed by the trial court that its consideration of the evidence was for the limited purpose of showing identity, state of mind, and elements of the offense charged in the indictment. Finally, the court, in charging the jury, again gave limiting instructions as to the jury's consideration of the evidence of similar transactions. The trial court's finding of similarity was not clearly erroneous, and it did not err in its limiting instruction to the jury on the similar transaction evidence. See *Sutton v. State.*[14]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 15, 2002 —
RECONSIDERATION DISMISSED APRIL 10, 2002.

*Robert J. Storms*, for appellant.
Willie Stinson, *pro se.*
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Anne M. Long, Assistant District Attorneys*, for appellee.

---

[14] *Sutton v. State*, 245 Ga. App. 881, 883 (539 SE2d 227) (2000).