A03A0616. BROWN v. THE STATE.
(582 SE2d 183)

SMITH, Chief Judge.

James B. Brown was charged by accusation with two counts of DUI, failure to maintain lane, and violation of the open container law. After the trial court denied his motion to suppress/motion in limine, he stipulated to the results of field sobriety tests and the State-administered breath test and agreed to a bench trial. He now appeals from his convictions for one count of DUI and the remaining two counts, enumerating as error only the trial court's denial of his motion to suppress/motion in limine.

Brown concedes that he had been drinking and that once the stop was made, the Henry County sheriff's deputy who stopped him gleaned sufficient evidence to constitute probable cause to arrest him. He contends, however, that because the deputy did not have an articulable suspicion sufficient to authorize the stop, the trial court erred in denying the motion to suppress/motion in limine. We do not agree.

It is this court's duty in reviewing a trial court's ruling on a motion to suppress to ensure that a substantial basis existed for the trial court's decision. We are obligated to construe the evidence to support the trial court's ruling. *Stinson v. State*, 254 Ga. App. 810 (1) (564 SE2d 39) (2002). The trial court's order must be affirmed if any evidence supports it, and the trial court's determination regarding questions of fact is accepted unless it is clearly erroneous. *Williams v. State*, 254 Ga. App. 8, 11 (2) (561 SE2d 149) (2002).

The standard for an investigatory stop is well established. An officer may stop a vehicle for investigation if it is justified by

> specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. . . . This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.

(Citations and punctuation omitted.) *Johnson v. State*, 230 Ga. App. 535, 537 (1) (496 SE2d 785) (1998). Applying these principles to the

facts in this case, we find that the deputy was authorized to stop Brown's truck briefly.[1] The evidence presented at the hearing on the motion to suppress showed that the deputy was operating stationary radar and scanning police radio at about 2:00 a.m. when he heard a police radio report of an altercation at a nearby Waffle House. Because the deputy's vehicle was the closest to the Waffle House, he volunteered to respond and arrived at the scene in "a minute or so." As his car entered the Waffle House parking lot, the deputy observed a green truck leaving it. Five or six people, including at least two Waffle House employees, were standing outside pointing at the green truck. Based upon the radio report and his observation at the scene of the people pointing at the green truck, the deputy concluded that the people in the truck had been "involved in the altercation" in the radio report. He activated his blue lights and stopped the truck.

The driver, identified at the hearing as Brown, produced his license and insurance card and the registration for the truck. But when the deputy approached Brown, he "detected a very strong odor of alcohol." The deputy noticed that Brown's "eyes were glassy and bloodshot," and he began a DUI investigation. Shortly thereafter, Henry County police officers arrived, and they handled the Waffle House incident while the sheriff's deputy handled the DUI stop. Brown's passenger was escorted back to the Waffle House by a police officer to pay for the food. Brown was cooperative but admitted he had been at a party and had "a few beers." At trial, the passenger testified that he and Brown had been to "a couple of retirement parties" beginning at 2:00 p.m. the previous day, that he had been with Brown for about 12 hours, and that they had been drinking before stopping at the Waffle House to get something to eat. The passenger admitted being intoxicated, having drunk "a good bit." Brown testified that he had consumed "eight, nine beers" since 7:00 p.m.

Brown argues that the deputy lacked an articulable suspicion to stop his truck because the radio report did not describe a particular vehicle or its occupants. But

[a] dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. Even if the dispatcher's information comes from a citizen or an unidentified informant, the investigatory detention is valid, for patrolling officers are not

---

[1] Brown does not dispute that once the officer approached the truck and detected the odor of alcohol on Brown, his suspicion that Brown was an unsafe driver authorized him to administer the field sobriety tests, which established probable cause to arrest.

required to question dispatchers about the source of the information.

(Footnotes omitted.) *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999). Here, information about a disturbance at a specified nearby location was broadcast over police radio. The deputy corroborated this information with his personal observation of persons outside that location, the Waffle House, who were pointing at the green truck. Because the green truck was moving away from the scene, time was of the essence. The deputy was authorized under these circumstances to stop the truck briefly to determine if it had, indeed, been involved in the Waffle House incident. As the brief stop was authorized, the trial court did not err in denying Brown's motion to suppress.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MAY 12, 2003.

*Sexton & Morris, Ricky W. Morris, Jr., Edythe S. Whitaker,* for appellant.

*Charles A. Spahos, Solicitor-General,* for appellee.