A04A0171. TOTINO v. THE STATE.
(596 SE2d 749)

RUFFIN, Presiding Judge.

A jury found Nicholas Joseph Totino guilty of driving under the influence of alcohol to the extent that he was less safe to drive, driving while having an alcohol concentration of 0.10 grams or more (a "per se violation"), and following another vehicle too closely. Totino appeals, arguing that the evidence was insufficient to support the verdict and that the trial court should have granted a directed verdict of acquittal. Totino further asserts that the trial court erred in failing to rule on his motion in limine, refusing to exclude the arresting officer from the courtroom during trial, and denying his motion for new trial. Finding no error, we affirm.

1. On appeal from a criminal conviction, we construe the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient for the jury to find Totino guilty beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that, just before 2:00 a.m. on May 9, 2001, Lieutenant Thomas Bardugon of the Gwinnett

---

County Police Department observed Totino driving "right on the tail" of another car on Interstate 85. According to Bardugon, Totino was traveling approximately 70 mph and was, at times, only five feet from the car in front of him. Bardugon followed Totino for several miles, noting that Totino's vehicle weaved within its lane and stayed very close to the car in front the entire time.

Bardugon eventually stopped Totino and approached the vehicle. He immediately detected an odor of alcohol coming from Totino's car, and when Totino got out of the car, Bardugon noticed an alcohol odor about his person. In addition, Totino's speech was slurred and his eyes were slightly bloodshot. Totino admitted to Bardugon that he had consumed at least three alcoholic beverages that night.

Although Totino refused to perform any field sobriety tests, he agreed to blow into an alco-sensor, which tested positive for alcohol. Based on his observations, Bardugon determined that Totino was under the influence of alcohol to the extent that he was less safe to drive and arrested him. Following the arrest, Bardugon took Totino to jail, where he tested Totino's breath on the Intoxilyzer 5000. Totino gave two samples, which registered 0.114 and 0.101 grams of alcohol in the blood, respectively. These tests were conducted within three hours of Totino's operation of a car.

(a) Totino argues that the State failed to prove his guilt beyond a reasonable doubt. We disagree. Given Bardugon's testimony regarding Totino's manner of driving, his physical manifestations, and his performance on the breath tests, the jury was authorized to conclude that Totino was under the influence of alcohol to the extent that he was less safe to drive.[3] Furthermore, the results of the Intoxilyzer 5000 tests, as well as Bardugon's testimony, support the jury's conclusion that Totino's blood-alcohol content exceeded 0.10 grams within three hours of driving a car, a per se violation of OCGA § 40-6-391 (a) (5).[4] Finally, a jury could conclude from the evidence presented that Totino was guilty of following another vehicle too closely.[5]

(b) In a related argument, Totino asserts that, given the 0.010 margin of error associated with the Intoxilyzer 5000, he was entitled to a directed verdict on the per se violation charge. As Totino notes, if

---

[3] See *Viau v. State*, 260 Ga. App. 96, 97 (1) (a) (579 SE2d 52) (2003); OCGA § 40-6-391 (a) (1). We find unavailing Totino's novel assertion, presented without supporting argument or citation of authority, that Bardugon's decision to follow him on Interstate 85 was "tantamount to entrapment."

[4] See *Viau*, supra at (1) (b). At the time of Totino's arrest, the legal limit for blood-alcohol concentration in Georgia was 0.10 grams. See OCGA § 40-6-391 (a) (5) (2000). Effective July 2001, the legislature amended OCGA § 40-6-391 (a) (5) to prohibit driving with an alcohol concentration of 0.08 grams or more. See Ga. L. 2001, pp. 208, 214, 229.

[5] See OCGA § 40-6-49.

subtracted from his lower breath test reading, this margin of error would bring the test result (0.101 grams) below the 0.10 legal limit for alcohol concentration.

The record, however, contains no evidence of any margin of error associated with the Intoxilyzer 5000. Asked by counsel for both the State and Totino whether he was aware of the machine's margin for error, Bardugon responded that he did not know of a margin of error and had not been trained that a variance existed. We have not found, and Totino has not pointed to, any other testimony or evidence relating to a margin of error.

Totino asserts that, in *Scheipers v. State*,[6] this Court "recognized" that the Intoxilyzer 5000 has a 0.010 margin of error. We find this assertion meritless for several reasons. Initially, we note that the case on which Totino relies is physical precedent only and thus not binding.[7] Moreover, nothing in *Scheipers* supports Totino's implicit argument that a court should take judicial notice of the margin of error, obviating any need for proof at trial. Although "[a]n accused may always *introduce evidence* of the possibility of error or circumstances that might have caused the [breathalyzer] machine to malfunction,"[8] Totino has not done so here. Without evidence that such margin of error exists, his claim necessarily fails.

Furthermore, even if the evidence had established a 0.010 margin of error, Totino would not have been entitled to a directed verdict on this basis. As we have consistently found, "an Intoxilyzer's margin of error relates to the weight given to the test results rather than to their admissibility[,] . . . [and] the results are direct evidence of guilt."[9] In other words, the evidence supporting a per se charge is not insufficient simply because the Intoxilyzer's margin of error brings a breathalyzer test result below Georgia's legal limit for blood-alcohol content.[10]

2. Totino also argues that the trial court should have granted him a directed verdict or new trial because Lieutenant Bardugon gave false and "highly prejudicial" testimony regarding the breathalyzer's margin of error. As an initial matter, Totino did not object to this alleged false testimony. Thus, he has waived any error relating to its admission.[11] Moreover, there is no evidence that Bardugon testified falsely. Even assuming that a margin of error for the breathalyzer

---

[6] 234 Ga. App. 112 (505 SE2d 835) (1998) (physical precedent only).

[7] See Court of Appeals Rule 33 (a).

[8] (Emphasis supplied.) *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991).

[9] *Bagwell v. State*, 248 Ga. App. 806, 809 (3) (547 SE2d 377) (2001). See also *Cawthon v. State*, 235 Ga. App. 791 (1) (510 SE2d 586) (1998); *Scheipers*, supra at 112-113.

[10] See *Bagwell*, supra; *Cawthon*, supra; *Scheipers*, supra.

[11] See *Humphrey v. State*, 249 Ga. App. 805, 808 (2) (549 SE2d 144) (2001).

exists, Bardugon merely testified that he was not aware of and had not received any training about such variation. He never asserted that the instrument has no margin of error. Accordingly, this enumeration of error lacks merit.

3. Totino further claims that the trial court erred in failing to rule on his motion in limine regarding a gun located in his car at the time of his arrest. Prior to trial, Totino moved to exclude this evidence as irrelevant, and the trial court instructed the State not to discuss the gun during opening statements. The trial court also indicated that it would make a final ruling on Totino's motion before the first witness testified, but it never actually ruled on the issue.

Lieutenant Bardugon, the State's only witness, did not mention the gun during direct examination by the State. When asked by defense counsel about a second officer's role in the traffic stop, however, he responded: "I did have a second officer show up because Mr. Totino did have a licensed gun in the car and there [were] two people in the car. It had nothing to do with the case, but I did ask for another officer to stand by." Totino did not object to this testimony or ask that it be stricken from the record.

On appeal, Totino argues that the trial court erred in failing to rule on his motion in limine, which would have precluded such testimony. Under Georgia law, however, "[i]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver."[12] Counsel failed to obtain a ruling on the motion in limine and, when presented with testimony about the gun, he did not object. Under these circumstances, Totino has waived the alleged error.[13]

Furthermore, even if an error occurred that was not waived, the record does not support reversal. At best, Totino's complaint involves the admission of irrelevant testimony. And such admission "is not a ground for reversal unless it can be shown the evidence was prejudicial."[14] Bardugon testified that Totino had a licensed gun in the car, which "had nothing to do with the case." Totino has not shown that this testimony prejudiced him in any way, and we find it highly unlikely that it contributed to the jury's verdict. Any error, therefore, was harmless.[15]

4. Finally, Totino asserts that the trial court erred in failing to exclude Lieutenant Bardugon from the courtroom during trial. The

---

[12] (Punctuation omitted.) *Harris v. State,* 190 Ga. App. 343, 348 (4) (b) (378 SE2d 912) (1989).

[13] See *Wright v. State,* 259 Ga. App. 74, 77 (3) (a) (576 SE2d 64) (2003); *Dyer v. State,* 257 Ga. App. 267, 268-269 (3) (570 SE2d 692) (2002).

[14] (Punctuation omitted.) *Scott v. State,* 213 Ga. App. 84, 88 (3) (444 SE2d 96) (1994).

[15] See id.; *White v. State,* 174 Ga. App. 699, 700 (1) (331 SE2d 72) (1985).

record shows that, prior to trial, Totino invoked the rule of sequestration and specifically requested that Bardugon be excluded. The prosecutor objected, asserting that she needed Bardugon to assist her in presenting the State's case. She also noted that Bardugon would be the State's first and, most likely, only witness. The trial court permitted Bardugon to stay, and Bardugon was the only witness called by the State. After Totino testified on his own behalf, however, the State recalled Bardugon to rebut Totino's testimony regarding a statement Bardugon allegedly made to him.

A trial court has discretion to grant an exception to the rule of sequestration, and we will not reverse the trial court's decision absent an abuse of discretion.[16] Furthermore, "[i]t is well-settled that the trial court does not abuse its discretion by allowing the investigating officer to remain in the courtroom to assist in the prosecution of the case after the rule of sequestration is invoked or by allowing the investigating officer to testify after all other witnesses called by the State."[17] Here, the prosecutor asserted that she needed Bardugon to help in the State's presentation of its case, and he testified as the prosecution's only witness. Although Bardugon also testified in rebuttal following Totino's testimony, we do not find that the trial court abused its discretion in excepting Bardugon from the rule of sequestration.[18]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED MARCH 15, 2004.

*S. Robert Hahn, Jr., George L. Kimel,* for appellant.
*Gerald N. Blaney, Jr., Solicitor-General, Wanda L. Vance, Jeffrey P. Kwiatkowski, Assistant Solicitors-General,* for appellee.

---

[16] See *Wiseman v. State,* 168 Ga. App. 749, 751 (5) (310 SE2d 295) (1983).
[17] *McSears v. State,* 208 Ga. App. 624, 625 (2) (431 SE2d 705) (1993).
[18] See *Justice v. State,* 213 Ga. 166 (2) (97 SE2d 569) (1957); *Wiseman,* supra.