### A04A1252. MALDONADO v. THE STATE.
(603 SE2d 58)

BLACKBURN, Presiding Judge.

Following a jury trial, Pedro Maldonado was convicted on two counts of trafficking in cocaine. He appeals, arguing that the trial court erred by: (1) admitting into evidence the lab results identifying the substance as cocaine where the State failed to adequately prove the chain of custody of the seized substance, (2) not dismissing all charges where the State failed to preserve certain inaudible voice tapes of the illegal transactions, and (3) allowing a police witness who served on a specialized drug enforcement task force to describe the nature of that task force. Discerning no error, we affirm.

Construed in favor of the verdict, the evidence shows that the High Intensity Drug Trafficking Areas (HIDTA) task force consisting of personnel from various law enforcement agencies gave money to a confidential source who, under police surveillance, used that money to purchase one pound of cocaine from Maldonado and a cohort on two separate occasions on October 17 and November 4, 1997. Maldonado and his cohort were charged with two counts of trafficking in cocaine and two counts of selling cocaine.

At the joint trial of Maldonado and his cohort, Maldonado objected to the admission of the test-results testimony of a Drug Enforcement Agency (DEA) chemist on the ground that the chain of custody had not been established. The court overruled the objection, and Maldonado moved for a directed verdict following the presentation of the State's case on the ground that the chain-of-custody evidence was inadequate to admit the test results and therefore required an acquittal. The court denied this motion also. Based on the evidence described above, a jury found Maldonado and his co-defendant guilty on all counts. Merging the selling counts into the trafficking counts, the court sentenced Maldonado on the two trafficking counts.

1. Maldonado first contends that the court should have directed a verdict on all counts since the chain-of-custody evidence was inadequate for admitting the cocaine test results. We disagree.

> [T]o show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that

seized and that there has been no tampering or substitution. [Cit.] The [S]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.

*Sanders v. State.*[1] See *Mullins v. State.*[2] We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-discretion standard. *Johnson v. State.*[3]

Here the State proved that on both occasions the confidential source turned the substance over to Agent Britt within minutes of receiving it from Maldonado. After weighing the substance (each package weighed approximately 560 grams), Agent Britt both times heat-sealed the substance into plastic bags marked as showing that the substance came from the identified transaction. Agent Britt then boxed and mailed the substance to the DEA crime lab in Miami. An evidence technician eventually received the packages via registered mail in the DEA crime lab in Washington, D.C., and placed them in the vault from which the DEA chemist in the normal course of his work obtained them for testing. The chemist determined that the heat-sealed envelopes had not been tampered with or opened. He then weighed and tested the contents of each package, with the October 17 substance weighing 500 grams and consisting of 87 percent pure cocaine, and with the November 4 substance weighing 505 grams and consisting of 90 percent pure cocaine.

At trial, these two packages and their contents were admitted into evidence. The confidential source testified that these two packages and their contents (which included a newspaper used by the source to wrap the October 17 substance and a distinctive blue box used to carry the November 4 substance) were the items received from Maldonado. Agent Britt and another officer also identified these items as those Agent Britt had received from the confidential source. The chemist identified the contents as the substance he had tested as positive for cocaine. Based on this evidence, the trial court found that the chain-of-custody evidence was adequate to establish with reasonable certainty that the substance tested by the DEA chemist was the substance obtained from Maldonado. We discern no abuse of discretion.

Maldonado claims nonetheless that there is a missing link or break in the chain of custody in that no one from the Miami DEA office

[1] *Sanders v. State*, 243 Ga. App. 216, 217 (1) (534 SE2d 78) (2000).

[2] *Mullins v. State*, 241 Ga. App. 553, 554 (1) (525 SE2d 770) (1999).

[3] *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999), cert. denied, 528 U. S. 1172 (120 SC 1199, 145 LE2d 1102) (2000).

testified as to the receipt of the evidence there or as to the forwarding of that evidence to the Washington, D.C. office. Maldonado cites to *Apodaca v. Baca*,[4] a New Mexico case in which police mailed a blood specimen to Van Atta Laboratory, which no longer tested such specimens. Id. at 965. Van Atta Laboratory apparently forwarded the specimen to Beighley Laboratory, which tested the blood as containing .19 percent alcohol. At trial, no one from Van Atta Laboratory testified as to the receipt of the specimen or as to the forwarding of that specimen on to Beighley Laboratory. The New Mexico Supreme Court held that this missing link precluded the admission of the test results. Id. at 966. Maldonado argues that the missing testimony from the Miami DEA office similarly should preclude the admission of the test results here.

Maldonado's argument fails for at least three reasons. First, the Miami office and the Washington, D.C. office are simply branches of the federal DEA crime lab; they are not separate laboratories owned by different entities. Absent affirmative evidence of tampering, a crime lab and all its branch offices and employees are considered as a single link in the chain of custody. *Givens v. State*[5] ("[s]ince there is no affirmative evidence of tampering, the trial court did not err in treating the Georgia Crime Lab as a single 'link' in the chain of custody for admissibility purposes"). See *Whitfield v. State*[6] (test-results testimony from chemist in Savannah branch of State Crime Lab admissible even though some evidence showed specimen was originally received in the Augusta branch). In both *Givens* and *Whitfield*, the absence of any affirmative evidence of tampering was determinative in rejecting the accused's complaints that not all persons in the chain of custody testified or that the evidence started off in a different branch.

Focusing on this language, *Scott v. State*[7] held that testimony from the law enforcement officer that he delivered the suspected cocaine to the State Crime Lab and testimony from the crime lab technician that she retrieved the material from her supervisors were sufficient to establish the chain of custody, even though neither the supervisors nor the technician who originally received the material at the crime lab testified at trial. "[I]n the absence of affirmative proof of tampering, proof that the evidence was in the custody of the State Crime Lab established the chain of custody." Id. "The State need not establish a 'perfect' chain of custody for evidence within the crime lab

[4] *Apodaca v. Baca*, 385 P2d 963 (N.M. 1963).
[5] *Givens v. State*, 214 Ga. App. 774, 775 (2) (449 SE2d 149) (1994).
[6] *Whitfield v. State*, 217 Ga. App. 402, 404 (2) (457 SE2d 682) (1995).
[7] *Scott v. State*, 227 Ga. App. 900, 901 (2) (490 SE2d 208) (1997).

itself." *Mullins*, supra at 554 (1). Thus, since no affirmative evidence showed tampering, Agent Britt's testimony that he sent the material to the DEA crime lab and the DEA chemist's testimony that he received the material in the normal course of his work is sufficient, even though the material was sent originally to a separate branch of the DEA crime lab. Proof that the evidence was in the custody of the DEA crime lab established the chain of custody, since a chain of custody within the DEA crime lab itself is not required.

Second, even if a link in the chain of custody were missing, such would not alone require the exclusion of the test results. In *Palmer v. State*,[8] one officer gave the suspected cocaine to a second officer, who then delivered it to the crime lab technician. Although the first officer and the crime lab technician testified at trial, the second officer did not. Holding that the trial court did not err in admitting the test results, *Palmer* explained: "The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." Id. The State need only show with reasonable certainty that the substance tested is the same as that seized, with no tampering or substitution. Id. See *Boyer v. State*.[9]

Third, where the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab technician who tests the substance received it in the same container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized. Quoting *State v. Fornier*[10] (a New Hampshire case), *Interstate Life &c. Ins. Co. v. Whitlock*[11] stated:

> Considering the entire record, especially the unbroken seal on the container and the writing found therein, *the only logical and sensible explanation* of the situation is that the trooper wrote the transmittal slip, placed it in the container along with the tube of defendant's blood, and that these were what the State chemist received. *Although the exact course by which the container was transferred from the refrigerator in the State Police headquarters to the laboratory of the State chemist was not detailed there was sufficient evidence to warrant a finding that the blood analyzed was the defendant's.*

---

[8] *Palmer v. State*, 250 Ga. 219, 222 (3) (297 SE2d 22) (1982).

[9] *Boyer v. State*, 178 Ga. App. 372, 373 (1) (343 SE2d 146) (1986).

[10] *State v. Fornier*, 167 A2d 56, 57 (N.H. 1961).

[11] *Interstate Life &c. Ins. Co. v. Whitlock*, 112 Ga. App. 212, 224 (3) (144 SE2d 532) (1965).

(Punctuation omitted; emphasis in original.) See *Redding v. State*[12] (proper security procedures are the key to establishing chain of custody); *Campbell v. State*[13] ("[i]n light of the sealed nature of the container and the lack of any evidence of tampering, we are convinced that the chain of custody is unbroken up to its opening by the state analyst"). See also *Brinson v. State*[14] (tamper-resistant nature of materials and procedure of sending via registered mail showed with reasonable certainty that specimen tested by lab was that taken from victim's body). Indeed, since the *Apodaca* decision, New Mexico has also focused on the tamper-resistant nature of the package containing the specimen as establishing the necessary foundation for admissibility. See *State v. Sanchez*;[15] *South v. Lucero*.[16]

Maldonado's complaint that the weight of the substance differed by ten percent between the field-weighing by Agent Britt and the lab-weighing by the DEA chemist is not sufficiently material to require the exclusion of this evidence. See *Davidson v. State*[17] (seven percent difference). Nor is the several month delay between the shipment of the substance to the crime lab and the testing of the substance by the DEA chemist sufficiently material. See *Williams v. State*[18] (over a year delay).

Based on the above analysis, we hold that the trial court did not abuse its discretion in determining that the State laid the proper chain-of-custody foundation for admitting the test results.

2. Maldonado contends that his due process rights were violated when the State failed to preserve certain voice tapes of the two transactions, which tapes Agent Britt had determined were completely inaudible. Maldonado claims that because of the State's actions, the trial court should have dismissed the charges against him.

Maldonado's co-defendant raised this same argument in his appeal to this Court, which we discussed at length and rejected. See *Giraudy v. State*.[19] For the same reasons set forth in *Giraudy*, we also reject this argument here.

3. Maldonado's final enumeration is that the trial court erred in denying his motion for mistrial when Agent Britt described the law enforcement task force for which he was working at the time he was

---

[12] *Redding v. State*, 239 Ga. App. 718, 722 (5) (521 SE2d 840) (1999).

[13] *Campbell v. State*, 136 Ga. App. 338, 341 (3) (221 SE2d 212) (1975).

[14] *Brinson v. State*, 208 Ga. App. 556, 557 (2) (430 SE2d 875) (1993).

[15] *State v. Sanchez*, 652 P2d 1232, 1236 (B) (N.M. Ct. App. 1982).

[16] *South v. Lucero*, 595 P2d 768, 772 (B) (N.M. Ct. App. 1979).

[17] *Davidson v. State*, 257 Ga. App. 260, 266 (2) (570 SE2d 698) (2002).

[18] *Williams v. State*, 153 Ga. App. 421, 422 (3) (265 SE2d 341) (1980).

[19] *Giraudy v. State*, 252 Ga. App. 219, 220-221 (555 SE2d 874) (2001).

overseeing the undercover operation. Agent Britt testified: "The Atlanta HIDTA Task Force—first of all, the initials H-I-D-T-A mean[] High Intensity Drug Trafficking Areas. The Task Force is combined of a combination of federal, state, and local officers. Our purpose is to conduct investigation on drug organizations, long-term type investigations." Maldonado argues: "Since only three people were indicted and only two put on trial, this gave the impression that Agent Britt had information of Appellant's guilt that was not presented to the jury." We disagree. Agent Britt's routine background description of the task force to which he was assigned did not convey any improper impressions about Maldonado or about the evidence of his guilt. This enumeration is without merit.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JULY 23, 2004 — 

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.