## A06A1907. BUCKHOLTS v. THE STATE.
(641 SE2d 246)

PHIPPS, Judge.

Charlie B. Buckholts appeals his convictions of following too closely and trafficking in cocaine. He contends that the evidence was insufficient to sustain the following too closely conviction and that the trial court erred by admitting similar transaction evidence and by

---

rejecting his claim of ineffective assistance of counsel. Because Buckholts has shown no error, we affirm.

The state showed that on October 7, 2004, Officer Chad Payne of the Houston County Sheriff's Office observed Buckholts driving his pickup truck on Interstate 75. According to Payne, "traffic conditions were medium," and Buckholts was trailing the truck ahead of him "so close that another vehicle couldn't move in between if he had to." He stopped Buckholts, advised him that he had been stopped for following too closely, and obtained his driver's license. While Payne was checking the status of Buckholts's driver's license, a drug dog brought to the scene by another officer alerted on the bed area of Buckholts's truck. Buckholts consented to a search of his vehicle, and Payne found concealed under the bed's cover what was determined to be 178.94 grams (plus or minus 0.06 grams) of a substance containing 69.9 percent (plus or minus 0.03 percent) pure cocaine. During a pat-down of Buckholts's person, Payne found $1,036 in one of his pockets.

After testifying to the above, Payne was asked during direct examination whether anything else about the stop indicated to him that Buckholts was involved in trafficking contraband. He answered yes and related that various personal papers found in Buckholts's truck showed his last name as "Buckholts," but the last name on the driver's license he presented was "Buckles." Payne testified that law enforcement officers often encountered individuals involved in criminal activity who "change their identification or to try to make us believe that they're someone they're really not." As an example, Payne reported that during a recent stop, the motor vehicle driver presented a driver's license issued in a name other than his own, and a search of that person's vehicle yielded a kilogram of cocaine.

As similar transaction evidence, the state showed that Buckholts had previously possessed cocaine with the intent to distribute. In 1987, a state patrol officer stopped Buckholts for speeding and driving on the wrong side of a state highway near Interstate 75. Buckholts consented to a search of his vehicle, during which the officer discovered five small bags of powdered cocaine, two small bags of crack cocaine and one match box with two pieces of crack cocaine. In connection with this incident, Buckholts pled guilty to cocaine possession with the intent to distribute.

Buckholts provided an explanation for his license having been issued with the last name "Buckles." He had used the last name "Buckles" from birth to about age seven, when his father proclaimed, "We're Buckholts." Accordingly, his family adopted that last name. Obtaining his driver's license subsequently, however, required him to show his birth certificate. Because it showed "Buckles," his license

was issued in that last name. Otherwise, he had continued to use "Buckholts," including entering the military under that name.

With respect to the 1987 incident, Buckholts testified that when he was stopped for speeding, he had been "playing chicken in the road." He was aware that he had the contraband in his vehicle, consented to a search of his vehicle, and after the drugs were discovered, he pled guilty. He explained, "I was using cocaine. . . . I was guilty. It was mine. I just took responsibility."

With respect to the 2004 incident, however, Buckholts denied knowing that the cocaine was in his vehicle. He testified that he and his wife owned the truck, but kept keys for it at their second house, where his three sons lived; that he had left his truck there about two days before the incident; that when he returned for it on the day of the incident, the truck was not in the same location he had parked it, and he did not check the truck bed; that his sons and his godson had his permission to drive his truck; that he never locked the bed of his truck; and that since the 2004 incident, one of his sons had been incarcerated for a drug offense, and his godson had been charged with a drug crime.

1. Buckholts contends that the evidence was insufficient to support his following too closely conviction. The indictment charged that Buckholts had committed this traffic violation by "follow[ing] another vehicle more closely than was reasonable and prudent in light of the speed of such vehicles and the traffic upon the roadway and the condition of the roadway."

OCGA § 40-6-49 (a) provides, "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Evidence that Buckholts had violated this Code provision was presented through Payne. He described the traffic conditions on the interstate and the length of the space Buckholts was leaving between his truck and the truck ahead of him. Payne also testified that a video recording of Buckholts's stop shown to the jury demonstrated the traffic conditions in which Payne was driving. Viewed in a light to favor the verdict, the evidence authorized the jury to find beyond a reasonable doubt that Buckholts had followed the lead truck more closely than was reasonable and prudent in light of the speed of the vehicles and traffic conditions.[1] .

Buckholts argues that Payne's conclusion that he had followed too closely was not based upon the Code provision under which he was indicted, but was based instead upon OCGA § 40-6-49 (b), and that

---

[1] See generally *Totino v. State*, 266 Ga. App. 265, 265-266 (1) (a) (596 SE2d 749) (2004).

the evidence did not establish that he had violated that provision. Under OCGA § 40-6-49 (b),

> [t]he driver of any motor vehicle which is drawing another vehicle when traveling upon a roadway outside of a business or residential district and which is following another motor truck or motor vehicle drawing another vehicle shall, whenever conditions permit, leave sufficient space so that an overtaking vehicle may enter and occupy such space without danger. . . .

Buckholts points out that there was no evidence that his vehicle was drawing another.

Buckholts's argument is unavailing. The relevant question here is whether the evidence sufficiently supported the jury's guilty verdict on the offense in the manner charged. It is of no importance here whether the evidence authorized a finding that Buckholts was guilty of the offense in a manner not charged.

2. Buckholts contends that the trial court erred by admitting the similar transaction evidence. He argues that the 1987 incident was too dissimilar to the one underlying this case and was not sufficiently connected to the charged drug crime because it occurred approximately 17 years earlier.

The record shows that the state presented the evidence for the proper purposes of showing Buckholts's bent of mind and course of conduct. For similar transaction evidence to be admissible, the state must demonstrate, among other things, that a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter.[2] Courts must focus on the similarities of the occurrences rather than their differences, particularly when, as here, the purpose of the evidence is to establish intent, as opposed to identity.[3] Further, the

> (m)ere lapse of time between the commission of any prior similar crimes and the commission of the offenses currently at trial does not render the evidence automatically inadmissible. Rather, lapse of time is a factor to be taken into consideration when balancing the probative value of the evidence against its potentially prejudicial impact.[4]

---

[2] *Collins v. State*, 273 Ga. 93, 94 (2) (538 SE2d 47) (2000), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[3] See *Collins*, supra; *Stinson v. State*, 254 Ga. App. 810, 813 (3) (564 SE2d 39) (2002).

[4] *Ledford v. State*, 275 Ga. App. 107, 110 (620 SE2d 187) (2005) (citation omitted); compare

Having reviewed the record, we conclude that there was a sufficient connection between the earlier drug crime and the one at issue. In both instances, Buckholts's vehicle was stopped on or near Interstate 75 for driving in an unlawful manner. Upon each stop, Buckholts consented to a search of his vehicle, and the search yielded cocaine. And there is no doubt that Buckholts committed the prior act, as he confessed to it. There was a sufficient similarity between the two acts so that proof of the former tended to prove the latter. Although a number of years elapsed between the prior transaction and the drug crime at issue here, we conclude that the prior act's probative value, which showed a particular behavior pattern and specific course of conduct, was not outweighed by its prejudicial effect.[5] Thus, the trial court did not err in admitting the similar transaction evidence.[6]

3. Buckholts contends that the trial court erred in rejecting his claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must establish, pursuant to *Strickland v. Washington*,[7] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[8] A court addressing the ineffective assistance issue is not required to approach the inquiry in any particular order or even to address both components if the defendant has made an insufficient showing on one.[9] Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.[10] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[11]

(a) Buckholts argues that his trial attorney performed deficiently by not seeking suppression of the drug evidence on the ground that his consent was obtained during an illegal stop. "When trial counsel's failure to pursue a motion to suppress is the basis for a claim of

---

*Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991) (incident 31 years in the past was too remote).

[5] See *Fielding v. State*, 278 Ga. 309, 310 (2) (602 SE2d 597) (2004) (incident 25 years prior to charged crime was not found to be too remote); *Stinson*, supra (where the defendant is proved to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct).

[6] See *Fielding*, supra; *Collins*, supra at 94-95; *Stinson*, supra.

[7] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[8] See *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[9] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

[10] Id.

[11] *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000).

ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel pursued the motion."[12]

"The stop of a vehicle is authorized if an officer observes the commission of a traffic offense."[13] Because Payne lawfully stopped Buckholts based upon having observed Buckholts commit a traffic violation,[14] the consent was not tainted by an illegal stop.[15] Therefore, Buckholts has not made the requisite showing that the drug evidence would have been suppressed had defense counsel pursued a suppression motion; and failure to pursue a meritless motion is not evidence of ineffective assistance.[16]

(b) Buckholts argues that his trial attorney performed deficiently by failing to object to Payne's testimony regarding the use of aliases by some individuals involved in criminal activity. He asserts that evidence that he used different last names improperly injected his character into evidence and that Payne's report that he found cocaine during a stop of some other individual who used an alias was irrelevant and prejudicial to his case.

Evidence that Payne discovered during the search of Buckholts's vehicle that Buckholts used the name "Buckles" for his driver's license did not improperly place Buckholts's character at issue. Circumstances connected with an accused's arrest are not automatically prejudicial; neither are they automatically relevant; rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence.[17] Having charged Buckholts with cocaine trafficking by knowingly possessing twenty-eight grams or more of any mixture with a purity of ten percent or more of cocaine, the state had the burden of establishing that Buckholts intended to possess the contraband found in his truck. To prove this element, the state showed, along with other evidence, that Buckholts sometimes used a different last name. Subjecting this evidence to the same standard of relevancy and materiality applicable to other evidence,

---

[12] *Dawson v. State*, 271 Ga. App. 217, 221 (2) (b) (609 SE2d 158) (2005) (punctuation and footnote omitted).

[13] *Rucker v. State*, 266 Ga. App. 293, 294 (1) (596 SE2d 639) (2004) (punctuation and footnote omitted).

[14] See Division 1, supra.

[15] See *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997); *Hestley v. State*, 216 Ga. App. 573, 575 (1) (455 SE2d 333) (1995).

[16] See *Hayes v. State*, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

[17] See *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000); see also *Brinson v. State*, 276 Ga. 671, 673 (3) (581 SE2d 548) (2003) (trial court properly denied motion to exclude evidence that when searching defendant's apartment after a murder, in addition to the murder weapon, police officers found two other handguns, where defendant argued that such evidence was without probative value and improperly placed his character in issue).

we find the contested evidence relevant to the issue of Buckholts's intent in light of Payne's testimony linking drug trafficking with the use of aliases.[18] Therefore, Buckholts's trial counsel did not perform deficiently by not objecting to it. Moreover, even if Buckholts's trial counsel had objected to Payne's testimony about the stop of another motor vehicle driver, and the evidence had been suppressed, there is no reasonable probability that the outcome of Buckholts's trial would have been different.

(c) Buckholts argues that his trial attorney performed deficiently because he did not object to the admission of the cocaine evidence on the ground that the state failed to establish an adequate chain of custody. He complains that the state did not call witnesses to testify about the transportation of the cocaine between the Houston County Sheriff's Office evidence vault and the Georgia Bureau of Investigation (GBI) crime lab, where the seized substance was tested.

> (T)o show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.[19]

Payne testified that he found "the off-white substance powder" wrapped in aluminum foil in a white plastic bag; that he field-tested the substance, and the results showed positive for the presence of cocaine; and that he then handed the items taken from the truck to Wayne Franklin, another officer who had arrived at the scene. Franklin testified that he extracted from the plastic and foil wrapping the suspected cocaine and then placed the substance into two zip-lock bags, which he sealed, initialed, and placed into a third bag, which he also sealed and initialed. He attached to the outer bag an evidence control sheet, and submitted the bag (hereinafter State's Exhibit 3) into the evidence vault for transport by the vault custodian to the GBI crime lab for testing.

A GBI forensic chemist testified that, pursuant to GBI policy, he retrieved State's Exhibit 3 from the GBI's lock-box; that its paperwork showed that it had been submitted by "W. Franklin" from the Houston County Sheriff's Office for "Charlie B. Buckles"; that he

---

[18] OCGA § 24-2-1 (relevant evidence relates to questions being tried and bears upon them directly or indirectly); see *Brinson*, supra; *Benford*, supra.

[19] *Maldonado v. State*, 268 Ga. App. 691, 691-692 (1) (603 SE2d 58) (2004) (citations and footnotes omitted).

determined that State's Exhibit 3 had maintained a proper seal; that he then opened one of the bags without breaking Franklin's seal and tested its contents;[20] that he visually analyzed the substance in the other bags, determining that "there was one substance just broken down into three bags"; and that he returned to the opened bag that part of the substance not consumed by the testing, sealed it, and returned State's Exhibit 3 to the lock-box for retrieval by the submitting agency.

At trial, Franklin and the GBI forensic chemist examined State's Exhibit 3, which was presented as cocaine retrieved from Buckholts's truck, and testified that it was the same bag that they had sealed and placed either in the evidence vault or the lock-box. In addition, both confirmed that their respective seals remained unbroken.

Because this evidence shows that the state established an adequate chain of custody, any motion to suppress the cocaine evidence on the ground that the state failed to do so would have been properly denied.[21] "The fact that . . . persons in control of a fungible substance do[ ] not testify at trial does not, without more, make the substance or testimony relating to it inadmissible. The State need only show with reasonable certainty that the substance tested is the same as that seized, with no tampering or substitution."[22]

Buckholts argues that two evidentiary discrepancies indicate evidence tampering. First, he contrasts Payne's description of the suspected contraband found as an "off-white substance powder" with the GBI forensic chemist's description of the substance tested as "solid material." Second, he contrasts Franklin's account that he divided the seized suspected cocaine into two bags with the forensic chemist's account that three separate bags of the same substance had been submitted for testing.

But where, as here,

> the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab technician who tests the substance received it in the same container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized.[23]

---

[20] The substance in this bag weighed 60.82 grams, plus or minus 0.03 grams.

[21] See *Hayes v. State*, 276 Ga. App. 268, 271-272 (4) (623 SE2d 144) (2005); *Maldonado*, supra at 691-695.

[22] *Maldonado*, supra at 694 (1) (citations, punctuation and footnote omitted).

[23] Id. (citation and footnote omitted).

Both Franklin and the GBI forensic chemist examined State's Exhibit 3 at trial, and both confirmed that the items therein were in the same condition they were when they sealed the evidence bag and that their seals remained unbroken. In light of that, the cited discrepancies were not sufficiently material to make the requisite showing that a motion to suppress would have been successful.[24]

*Judgment affirmed. Smith, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 11, 2007.

*West & Corvelli, David S. West,* for appellant.
*Kelly R. Burke, District Attorney, George H. Hartwig III, Timothy M. Marlow, Assistant District Attorneys,* for appellee.