A08A1315. BRADY v. THE STATE.
(665 SE2d 412)

JOHNSON, Presiding Judge.

A jury found Kenneth Scott Brady guilty of three counts of sale of methamphetamine and one count of possession of methamphetamine. Brady appeals, alleging the trial court erred in allowing the crime lab witness to testify without a proper showing of chain of custody. We disagree and affirm Brady's convictions.

When there is an issue as to the chain of custody, the reviewing court must determine whether the state established with reasonable

certainty that the evidence examined is the same as that seized and there has been no tampering or substitution.[1] Brady argues that although the state crime lab technician testified that the evidence was transported to the crime lab by Misty Howell, he did not testify how he knew that fact and Howell did not testify. However, the fact that one of the persons in charge of the evidence does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible.[2]

In the present case, Brady sold methamphetamine to an undercover agent on three separate days. At the end of each of the sales, the undercover agent met with a supervising deputy who was monitoring nearby to turn in the drugs collected. After each transaction, the supervisor placed the drugs into an evidence bag, sealed the bag, placed his initials on the bag and placed the bag in a safe in the narcotics office the same day. He subsequently turned the drugs over to the evidence custodian. The supervisor testified that after the first transaction on January 5, 2005, he placed the drugs into the narcotics' office safe and turned these drugs over to Sergeant Bobby Martin, one of the evidence custodians, the next day, January 6, 2005. After the second transaction on January 11, 2005, the supervisor placed the drugs into the narcotics' office safe where they remained until January 26, 2005. After the final sale on January 19, 2005, the supervisor placed the drugs into the narcotics' office safe until January 26, 2005, when he gave the drugs from both the January 11 and January 19 sales to Martin.

According to the supervisor, the bags were "tamper proof" because if the bags were torn, they would stretch and show evidence of tampering. Until the bag was reopened and cut somewhere else it could not be tampered with. The supervisor was specifically asked on direct examination whether he could tell if the bags had been opened since he had sealed them, and he testified that the only opening he saw was from the state crime lab, and they cut the bag across the bottom, heat sealed, initialed, and dated the bag.

The supervisor further testified that his office had two evidence custodians, Sergeant Bobby Martin and Investigator Misty Howell, and that all the evidence was maintained and transported to the state crime lab by one of these custodians. Martin testified that he and Howell were the two evidence technicians and the only two people who had access to the vault where the evidence was stored. He and Howell would either receive the evidence straight from the

---

[1] See *Phillips v. Williams*, 276 Ga. 691 (583 SE2d 4) (2003); *Dean v. State*, 211 Ga. App. 28, 30 (3) (438 SE2d 380) (1993).

[2] See *Palmer v. State*, 250 Ga. 219, 222 (3) (297 SE2d 22) (1982); *Reason v. State*, 283 Ga. App. 608, 612 (2) (642 SE2d 236) (2007).

deputy or investigator or out of the evidence lockers. Once they sign for the evidence, the evidence is stored in the vault until Martin or Howell take it to the state crime lab. Evidence was routinely taken to the crime lab approximately once per month. Martin testified that by looking at the evidence sheets he knew that the drugs in question were turned over to him on January 6, 2005 and January 26, 2005 and placed in the vault. The drugs were subsequently transported from the vault to the crime lab by Howell on February 17, 2005.

Amy Parish of the Georgia State Crime Lab testified that she received the evidence, which was labeled state's exhibits 1, 2, and 3, from the sheriff's office in plastic evidence bags that were properly sealed and initialed. To avoid changing the nature of the top of the bag that was sealed and initialed, she cut a slit from the bottom, took a portion for analysis, wrote the information on the sample, placed it back in the evidence bag, resealed the bag, and put her initials on the bag. She tested a sample of the substances contained in the evidence bags, and each of the three substances came back positive for methamphetamine.

Contrary to Brady's argument, the state's evidence showed with reasonable certainty that the evidence examined was the same as the evidence seized. There was no evidence of substitution or tampering. Where the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab technician who tests the substance received it in the same container with no proof of tampering or substitution, the state has met its burden of showing with reasonable certainty that the substance tested was the same as that seized.[3] The trial court did not err in admitting the state crime lab evidence.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED JULY 11, 2008.

*Kathleen J. Anderson*, for appellant.
*Richard K. Bridgeman, District Attorney, Shariyf Abdul Muhammad, Assistant District Attorney*, for appellee.

---

[3] *Maldonado v. State*, 268 Ga. App. 691, 694 (1) (603 SE2d 58) (2004).